## Ex parte Parks.

1. Where an inferior court has jurisdiction of the cause and the person in a criminal suit, and no writ of error lies from this court, it will not on *habeas corpus* review the legality of the proceedings.
2. It is only where the proceedings below are entirely void, either for want of jurisdiction, or other cause, that such relief will be given.
3. Whether a matter for which a party is indicted in the District Court is, or is not, a crime against the laws of the United States, is a question within the jurisdiction of that court, which it must decide. Its decision will not be reviewed here by *habeas corpus*.
4. *Ex parte Yerger*, 8 Wall. 85, and *Ex parte Lange*, 18 id. 163, referred to and approved.

Mr. William Green presented the petition of Richard S. Parks praying for a writ of *habeas corpus*.

The petition is set forth, and the facts in the case are stated, in the opinion of the court.

Mr. Justice Bradley delivered the opinion of the court.

The petitioner for *habeas corpus* in this case was convicted of forgery in the District Court of the United States for the Western District of Virginia, and is in custody by virtue of a commitment under sentence of imprisonment in the penitentiary for said offence. Complaining that his conviction was illegal, by reason that the act for which he was convicted was not a crime against the laws of the United States, he applied to the circuit judge for a *habeas corpus*, and, after a hearing thereon, was remanded into custody. Not being satisfied with this decision, he now applies to this court for a *habeas corpus*. His petition is as follows: —

" *To the Honorable Morrison R. Waite, Chief Justice, and his Associates, Justices of the Supreme Court of the United States:*

" The petition of Richard S. Parks respectfully represents, that your petitioner is illegally confined in jail, at Harrisonburg, in Vir-

ginia, being in the custody of A. S. Gray, as Marshal of the United States for the Western District of Virginia, by virtue of a commitment under an illegal sentence of the District Court of the United States for the said district, the same (sentence) being void and in law a nullity, for want of jurisdiction in the said court to pass it upon and against your petitioner, which said sentence was pronounced in a case of the United States against your petitioner, a transcript of the record whereof is herewith presented. That your petitioner heretofore made application to the honorable judge of Circuit Court of the United States for the said district, that he would order the discharge of your petitioner upon a writ of habeas corpus sued out for that object; but his honor, the said judge of the Circuit Court, instead of discharging, remanded him to the custody of the said marshal, as will appear from a transcript of his order in the said matter, which transcript is likewise herewith presented. And that your petitioner therefore prays at your honors' hands the benefit of the writ of habeas corpus, to be directed to the said marshal, commanding him to have before your honors, at a day and place to be named therein, the body of your petitioner, together with the cause of his capture and detention, to undergo and receive whatsoever your honors shall then and there consider of him in that behalf.

" And your petitioner will ever pray, &c.

"Rich'd S. Parks."

The transcript of the record of conviction, which accompanies the petition, shows that the petitioner was indicted for forging the signature of C. Douglass Gray, register in bankruptcy, to the following receipt: —

"Harrisonburg, July 30, 1872.

" Received of J. D. Martin, by R. S. Parks, his attorney, the application, with necessary papers, for adjudication in bankruptcy of said Martin; also, $50, amount of required deposit.

"C. Douglass Gray, Register."

One count of the indictment charges that Parks committed the forgery for the purpose of authenticating the commencement of proceedings in bankruptcy in the case of J. D. Martin. Another count alleges the purpose to have been to authenticate a proceeding in the said case; namely, the filing of the paper with the register. There was a third count, which did not state the purpose.

The petitioner contends that the forging of this receipt is not a crime by any act of Congress, and that, as the courts of the United States have no common-law jurisdiction of crimes, the District Court had no jurisdiction to try him for the offence. The indictment is founded on the forty-sixth section of the Bankrupt Act (re-enacted and made more general in sect. 5419 of the Revised Statutes), which declares, that " if any person shall forge the signature of a judge, register, or other officer of the court, or knowingly concur in using any such forged or counterfeited signature . . . for the purpose of authenticating any proceeding or document, . . . such person shall be guilty of felony," &c. The petitioner insists that the paper whose forgery is charged is not a document which could be used in evidence in any proceeding, by reason of its being authenticated by the official signature of the register. This proposition may be questioned. But suppose it were true, the receipt could be used in evidence, if genuine, for the purpose of showing the fact stated therein as against the signer in his official as well as private capacity. At all events, it is not clear and free from all doubt that the forgery is not within the terms of the statute.

But the question whether it was or was not a crime within the statute was one which the District Court was competent to decide. It was before the court, and within its jurisdiction. No other court, except the Circuit Court for the same district, having concurrent jurisdiction, was as competent to decide the question as the District Court.

Whether an act charged in an indictment is or is not a crime by the law which the court administers (in this case the statute law of the United States), is a question which has to be met at almost every stage of criminal proceedings; on motions to quash the indictment, on demurrers, on motions to arrest judgment, &c. The court may err, but it has jurisdiction of the question. If it errs, there is no remedy after final judgment, unless a writ of error lies to some Superior Court; and no such writ lies in this case. It would be an assumption of authority for this court, by means of the writ of *habeas corpus*, to review every case in which the defendant attempts to controvert the criminality of the offence charged in the indict-

ment. It having been held that the regulation of the appellate power of this court was conferred upon Congress, and Congress having given an appeal or writ of error in only certain specified cases, the implication is irresistible, that those errors and irregularities, which can only be reviewed by appeal or writ of error, cannot be reviewed in this court in any other cases than those in which those processes are given. Now, it has always been held that a mere error in point of law, committed by a court in a case properly subject to its cognizance, can only be reviewed by the ordinary methods of appeal or writ of error; but that where the proceedings are not only erroneous, but entirely void, — as where the court is without jurisdiction of the person or of the cause, and a party is subjected to illegal imprisonment in consequence, — the Superior Court, or judge invested with the prerogative power of issuing a *habeas corpus*, may review the proceedings by that writ, and discharge from illegal imprisonment. This is one of the modes in which this court exercises supervisory power over interior courts and tribunals; but it is a special mode, and confined to a limited class of cases.

The general principles upon which the writ of *habeas corpus* is issued in England were well settled by usage and statutes long before the period of our national independence, and must have been in the mind of Congress when the power to issue the writ was given to the courts and judges of the United States. These principles, subject to the limitations imposed by the Federal Constitution and laws, are to be referred to for our guidance on the subject. A brief reference to the principal authorities will suffice on this occasion.

Lord Coke, before the Habeas Corpus Act was passed, excepted from the privilege of the writ persons imprisoned upon conviction for a crime, or in execution. 2 Inst. 52; Com. Dig., Hab. Corp. B.

The Habeas Corpus Act itself excepts those committed or detained for treason or felony plainly expressed in the warrant, and persons convict, or in execution by legal process. Com. Dig., Hab. Corp. B.

Lord Hale says, "If it appear by the return of the writ that the party be wrongfully committed, or by one that hath

not jurisdiction, or for a cause for which a man ought not to be imprisoned, he shall be discharged or bailed." 2 Hale's H. P. C. 144.

Chief Baron Gilbert says, "If the commitment be against law, as being made by one who had no jurisdiction of the cause, or for a matter for which by law no man ought to be punished, the court are to discharge. Bac. Abr., Hab. Corp. B, 10.

These extracts are sufficient to show, that, when a person is convict or in execution by legal process issued by a court of competent jurisdiction, no relief can be had. Of course, a superior court will interfere if the inferior court had exceeded its jurisdiction, or was not competent to act.

The courts of the United States derive their jurisdiction on this subject from the Constitution and laws of the United States. The fourteenth section of the Judiciary Act granted to all the courts power to issue writs of *scire facias, habeas corpus,* and all other writs necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law; and to the justices and judges, power to grant writs of *habeas corpus* for the purpose of inquiry into the cause of commitment · but it added a proviso, that the writ should not extend to prisoners in jail, unless in custody under or by color of authority of the United States, or committed for trial before some court of the same, or necessary to be brought into court to testify. It was found necessary to relax the limitation contained in this proviso, and this was done in several subsequent laws. See act of 1833 (4 Stat. 634), passed in consequence of nullification proceedings in South Carolina; act of 1842 (5 Stat. 539), passed in consequence of the *McLeod Case;* and act of 1867 (14 Stat. 44), passed in consequence of the state of things that followed the late rebellion.

The power of the Supreme Court is subject to a further limitation, arising from its constitutional want of original jurisdiction on the subject; from whence it follows that, except in aid of some other acknowledged jurisdiction, it can only issue the writ to review the action of some inferior court or officer. *Ex parte Barry,* 2 How. 65.

From this review of the law it is apparent, therefore, as

before suggested, that in a case like the present, where the prisoner is in execution upon a conviction, the writ ought not to be issued, or, if issued, the prisoner should at once be remanded, if the court below had jurisdiction of the offence, and did no act beyond the powers conferred upon it. The court will look into the proceedings so far as to determine this question. If it finds that the court below has transcended its powers, it will grant the writ and discharge the prisoner, even after judgment. *Ex parte Kearney*, 7 Wheat. 38; *Ex parte Wells*, 18 How. 307; *Ex parte Lange*, 18 Wall. 163. But if the court had jurisdiction and power to convict and sentence, the writ cannot issue to correct a mere error. We have shown that the court below had power to determine the question before it: and that this is so, is further manifest from the language of Chief Justice Marshall in the case of Tobias Watkins, 3 Pet. 203. He there says, " To determine whether the offence charged in the indictment be legally punishable or not, is among the most unquestionable of its [the court's] powers and duties."

But after the thorough investigation which has been given to this subject in previous cases, particularly those of *Ex parte Yerger*, 8 Wall. 85, and *Ex parte Lange*, 18 id. 163, it is unnecessary to pursue the subject further at this time.

The last-mentioned case is confidently relied on as a precedent for allowing the writ in this case. But the two are totally unlike. In *Ex parte Lange* we proceeded on the ground, that, when the court rendered its second judgment, the case was entirely out of its hands. It was *functus officio* in regard to it. The judgment first rendered had been executed and satisfied. The subsequent proceedings were, therefore, according to our view, void.

But, in the case before us, the District Court had plenary jurisdiction; both of the person, the place, the cause, and every thing about it. To review the decision of that court by means of the writ of *habeas corpus* would be to convert that writ into a mere writ of error, and to assume an appellate power which has never been conferred upon this court.

Since the cause was submitted to the court, the learned counsel for the petitioner has called its attention to the case

of *Booth and Rycroft*, 3 Wis. 157, as a case precisely in point in favor of granting the writ. It had probably escaped the recollection of counsel that this very case was reversed by this court in *Ableman* v. *Booth*, 21 How. 506, in which Chief Justice Taney delivered one of his most elaborate and able opinions.

As the entire record has been brought before us by the petition, and we are clear as to our want of authority to discharge the prisoner, the application for the writ is        *Denied.*