## Case No. 7,720.

### Ex parte KENYON.

[5 Dill. 385.] [1]

Circuit Court, W. D. Arkansas. 1878.

HABEAS CORPUS — WRIT RUNS INTO THE INDIAN COUNTRY—POWER TO RELEASE ON HABEAS CORPUS PERSONS CONVICTED BY THE COURTS OF THE CHEROKEE NATION.

1. By the laws of the United States, the supreme, circuit, and district courts, or the judges thereof, have power to grant the writ of habeas corpus within their respective jurisdictions.

2. The Indian country is within the jurisdiction of the western district of Arkansas. A writ of habeas corpus issued by the United States court of that district, or the judge thereof, will run in that territory.

3. If a person is held in custody in violation of the constitution, laws, or treaties of the United States—it matters not by whom he is held—

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

the courts of the United States, within their respective territorial jurisdictions, have power to issue the writ of habeas corpus to inquire into the cause of his imprisonment.

[Cited in Elk v. Wilkins, 112 U. S. 108, 5 Sup. Ct. 49.]

4. If a person is held in custody by virtue of the judgment of a court of another jurisdiction, and in violation of the constitution, laws, or treaties of the United States, a federal court will interfere by habeas corpus and examine the case so far as may be necessary to ascertain that fact.

5. An Indian may abandon his tribe, and, for the purpose of jurisdiction, become a member of the body politic known as citizens of the United States.

[Cited in dissenting opinion in Elk v. Wilkins, 112 U. S. 120, 5 Sup. Ct. 55.]

6. Actual residence in a place, with the intention that it is to be a principal and permanent residence, makes domicile; and absence from such a place, of a temporary nature, or in the exercise of some particular profession, office, or calling, does not change the domicile.

[Cited in U. S. v. Chong Sam, 47 Fed. 886.]

The petitioner for habeas corpus in this case was, upon the 21st day of February, 1878, convicted in the circuit court for Coo-wees-coowee district, Cherokee Nation, for the crime of larceny, and upon said conviction he was sentenced to be confined in the penitentiary of the Cherokee Nation, at Tallequah, for the period of five years. He prays that a writ of habeas corpus may issue, for "that the court of the Cherokee Nation which convicted him had no jurisdiction; that he is a citizen of the United States; that at the time of said arrest, trial, conviction, and sentence, and commission of said alleged offence, he was not a citizen of the Cherokee Nation; that he was at that time a citizen and resident of the state of Kansas; that he is restrained of his liberty and held in custody in violation of the laws and constitution of the United States, and the treaty stipulations lawfully made between the United States and said nation." Upon this statement the writ was issued, and the case came on for hearing, when the evidence taken disclosed this state of the case: The petitioner was born of white parents, who were citizens of the United States, living in the state of Connecticut; that he moved with his parents to the state of Missouri; that while they were living there he left their home and went to the Cherokee Nation, Indian Territory. After remaining there some time he was married to Mollie Cobb, a citizen of the nation; that he lived with her some six years, when she died; that at the time of his marriage his wife had some property, and, among other things, she owned a mare and colt. The petitioner, as the husband of Mollie, took possession of this colt, exercised acts of ownership over it, controlled it, broke it, and used it as he would his own. He bore this relation to this piece of property up to the death of his wife. After her death he took his household goods and his children by his wife Mollie and removed to the state of Kansas. He continued in possession of

this mare he is charged with stealing from the time of his marriage until he finally disposed of her in the state of Kansas. This possession was continuous and uninterrupted until that time, with the exception of a short time she was in the possession of a person in Kansas to whom he had pledged her for a debt. At the time he left the Cherokee Nation no letters of administration had been taken out on the estate of Mollie Kenyon, his deceased wife. This is substantially the state of facts as they appear from the evidence in the case.

Marume & Barnes and T. H. Barnes, for petitioner.

W. A. Doew and H. A. Rogers, for the Cherokee Nation.

PARKER, District Judge. The point made by the counsel for the Cherokee Nation, that this court has no authority to issue the writ of habeas corpus to run in the Indian Territory, is not, in my judgment, well taken. I should regret to be forced to conclude that in this vast extent of country, having an area of sixty-five thousand square miles and a population of one hundred thousand, those persons who might invoke this writ of right if they were out of that country could not receive its benefits because they were in it. This is the highest right possessed by an American citizen, and in a proper case his right to this writ follows him in the Indian country, as well as elsewhere.

By the laws of the United States, the supreme, circuit, and district courts, or the judges thereof, have power to grant this writ, within their respective jurisdictions, for the purpose of an inquiry into the cause of commitment. Rev. St. 1873, §§ 751, 752. This, of course, has reference to their territorial jurisdiction.

The writ of habeas corpus will be issued in the territorial jurisdiction of the said courts, or judges thereof, to relieve a person who is in custody in violation of the constitution, or of a law or treaty of the United States. If such person is held in custody in violation of the constitution of the United States, or of a law or treaty thereof, it matters not by whom he is held, the writ will be issued, and the person so held released.

If a person is so held by the authorities of a state, the writ will be issued by the federal courts, and the person released. Ex parte Bridges [Case No. 1,862]. If a person is held by virtue of a judgment of a state court which has no jurisdiction of the case, and in violation of the constitution, laws, and treaties of the United States, a federal court will interfere by habeas corpus and examine the case so far as may be necessary to see whether the court committing him has done so in violation of the constitution, laws, or treaties of the United States; in other words, it will look into the question of jurisdiction, and will examine such part of the case as may be involved in that question.

The Cherokee Nation does not certainly possess higher rights of sovereignty than the several states of the Union. If they cannot hold a party in custody or restrain him of his liberty in violation of the constitution, laws, or treaties of the United States, neither can it be done by the Cherokee Nation.

Now, this court has no disposition in the slightest degree to trench on the jurisdiction of the courts of the Indian Territory, but, on the contrary, will respect and uphold such jurisdiction, because peace and good order demand that the courts of that country, as well as this court, should possess the full measure of their jurisdiction. No one is more gratified than myself to see criminals punished for their crimes by the courts of that country. But when the question is presented whether one of these courts had jurisdiction, it is my duty, under the laws of the United States, to examine into it.

If the petitioner was tried, convicted, and sentenced by a court of the Cherokee Nation without its having jurisdiction, then he is held in violation of the constitution, laws, and treaties of the United States; but how far will this court examine into the case to ascertain if a person is held contrary to such constitution, laws, and treaties of the United States?

If the person is in custody by virtue of a conviction of a court, the federal court will only examine the case on habeas corpus so far as to ascertain whether the court which tried and sentenced him had jurisdiction of the person and subject matter. In other words, the federal court will look into the case far enough to see whether the court trying it had jurisdiction over the person, the act, and the place where it was committed—it will examine all the elements of the case which are involved in the question of jurisdiction.

The jurisdiction over the person, the place, and the acts committed must all concur to give any court of limited jurisdiction the right to try. If either one of these elements of jurisdiction is wanting, the right to try and convict does not exist. This court, in this proceeding, will only look thus far into this case, but it will look to so much of the case as is necessary to determine if all these requisites of jurisdiction exist. Ex parte Lange, 18 Wall. [85 U. S.] 163; Ex parte Parks, 93 U. S. 18; Ex parte Shaffenburg [Case No. 12,696].

While a federal court will not, on habeas corpus, re-examine a mere erroneous decision of a court having jurisdiction of the offence, yet it will go through the whole case, if necessary, to see if such court had jurisdiction both of the subject matter and of the person. Did the court which tried and sentenced the petitioner in this case have jurisdiction of the subject matter and of the person? To determine this it becomes necessary to look into the facts of the case; and in deciding the question of jurisdiction we have

a right to do this. There could be no larceny of this mare by the petitioner while she was rightfully and legally in his possession, because a man cannot commit a larceny against his own legal and rightful possession of property. The petitioner had such legal possession of this property during the life of his wife, and after her death, at least until letters of administration were taken out on her estate, which was not done, according to the evidence before me, until after he went to Kansas to live. He parted with possession at one time in the state of Kansas, when he pledged the mare. If such a thing could be possible, under the law, as a husband stealing the wife's property, it could not, by any construction of any law, be held to have been committed in this case until after he parted with the possession of the property in this way and then took it again and converted it to his own use. But this was done in the state of Kansas. Then the court which tried, convicted, and sentenced the petitioner did not have jurisdiction of the subject matter, as the place where the act was committed was beyond the territorial limits of its jurisdiction. This alone would be conclusive of this case.

But, again, if there was any crime committed, at any time, it was committed not only beyond the place over which the Indian court had jurisdiction, but, at the time it was committed, by one over whose person such court did not have jurisdiction; because, to give this court jurisdiction of the person of an offender, such offender must be an Indian, and the one against whom the offence is committed must also be an Indian. Rev. St. 1873, § 2146. Now, for the purposes of this case, it is not necessary to decide whether the terms of the treaty and the intercourse law include Indians by adoption as well as by birth—that is, Indians belonging to the tribe as well as those belonging to the race—for the principle that is applicable in this case would apply with equal force to either.

What is that principle of the law? It is this: When the members of a tribe of Indians scatter themselves among the citizens of the United States, and live among the people of the United States, they are merged in the mass of our people, owing complete allegiance to the government of the United States and of the state where they may reside, and, equally with the citizens of the United States and of the several states, subject to the jurisdiction of the courts thereof. Ex parte Reynolds [Case No. 11,719]; U. S. v. Elm [Id. 15,048], decided by United States district court of the Northern district of New York, opinion by Wallace, J. (Senate Report 268, 41st Cong. 3d Sess.) p. 11; 2 Story, Const. § 1933; Dred Scott v. Sandford, 19 How. [60 U. S.] 404.

Article 1, § 2, of the Cherokee constitution provides "that whenever any citizen shall remove with his effects out of the limits of this nation and become a citizen of any other government, all his rights and privileges as a citizen of this nation shall cease." This principle applies to Indians of the full blood or by birth as well as to those by adoption. Suppose it is conceded in this case that Kenyon, the petitioner, had become an Indian; it becomes important to see what was his status at the time of the commission of the offence, if any was committed.

He had left his domicile in the Indian country, and he had gained a domicile in the state of Kansas; in other words, he had abandoned his residence in the Indian Territory. He had moved his household effects from there, and had removed them, with his family, into the state of Kansas, with the intent of remaining in that state—that is, with the intent of having his residence there.

If there is actual residence in a place, with the intention that it is to be a principal and permanent residence, that makes domicile; and absence from such place, of a temporary nature, or in the exercise of some particular profession, office, or calling, does not change the domicile. Ennis v. Smith, 14 How. [55 U. S.] 263. This domicile had been acquired at the time of the commission of this offence, if any was committed; hence, the petitioner had clearly abandoned the Indian nation, and was then only subject to the laws of the place of his domicile. He was a citizen of the United States, and was subject to the laws of the state of Kansas. Therefore, the court which convicted him did not have jurisdiction over his person. And if it did not have jurisdiction of either the subject matter or the person of the petitioner, it could not try and sentence him to imprisonment, and such imprisonment would be in violation of the constitution, laws, and treaties of the United States, and this court could hardly be expected to stand by and see an American citizen deprived of his liberty for the period of five years under such circumstances.

Upon the showing made the petitioner must be released from custody. And it is so ordered.

See Ex parte Reynolds [Case No. 11,719]