**SACRAMENTO SUBURBAN FRUIT LANDS CO. v. MELIN.**

Circuit Court of Appeals, Ninth Circuit. December 17, 1929.

Motion for Modification of Opinion Denied January 13, 1930.

No. 5671.

908

Butler, Van Dyke & Desmond, of Sacramento, Cal., and Arthur C. Huston, of Woodland, Cal., for appellant.

Ralph H. Lewis and George E. McCutchen, both of Sacramento, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. The enterprise out of which this controversy arises is described in Sacramento Sub. Fruit Lands Co. v. Elm (C. C. A.) 29 F.(2d) 233, and Wellnitz v. Sac. Sub. F. L. Co. (Cal. App.) 274 P. 1016, and the general background of facts is the same. The plaintiff (appellee) purchased, or contracted to purchase, from defendant two separate tracts of ten acres each, at the agreed price of $350 per acre. He was then living at Frederic, Wis., and had never resided in California. But before he entered into either contract he came to Sacramento and spent some time in going over and inspecting the lands embraced in the project. He was a farmer of long ex-

perience in Wisconsin, but with no experience in California. For the first tract the contract was made in January, 1921, and plaintiff entered into actual possession in 1922. The contract for the second piece was executed in December, 1922, and the transaction was fully closed by the delivery of the deed on March 23, 1923. Alleging that he was induced to make the purchase by false and fraudulent representations, substantially the same in both cases, plaintiff on August 14, 1927, brought this action to recover damages. He pleaded the two purchases in separate causes of action. The period of limitations prescribed by the California code for such a cause is three years after "the discovery, by the aggrieved party, of the facts constituting the fraud." Code Civ. Proc. § 338, subd. 4.

In substance, the charges of fraud are that defendant falsely represented that the lands were well adapted for the raising of deciduous fruits of various kinds in commercial quantities, and that they were of a value of $350 per acre. In the first cause of action the only averment anticipatory of the defense that the action was barred by the statute of limitations is "that plaintiff did not discover the falsity of said representations until ——— day of February, 1927," and in the second cause there is no averment at all upon the subject. Under an instruction of the court to the effect that plaintiff should recover upon both or neither of the causes of action, the jury returned a general verdict in favor of plaintiff for $1,000.

As is to be inferred from this statement of facts, the statute of limitations is the subject of some of the defendant's assignments of error here. It is doubted whether the meager general averment touching discovery in the first cause of action (and as already stated there is none at all in the second cause) puts it beyond the reach of a demurrer appropriately pleading the statute. Lady Washington Consol. Co. v. Wood, 113 Cal. 482, 45 P. 809, 810. But defendant demurred only upon the ground that the complaint failed to state a cause of action without in any way suggesting this defense. Such a demurrer does not avail to raise the question of limitations under a well-settled rule of practice in California. See California Safe Dep. & T. Co. v. Sierra Valleys Ry. Co., 158 Cal. 690, 112 P. 274, Ann. Cas. 1912A, 729; Union Oil Co. v. Purissima H. O. Co., 181 Cal. 479, 185 P. 381. Moreover, not only was no exception taken to the order overruling the general demurrer, but it was entered by consent of counsel for both parties.

In its answer, however, defendant attempted expressly to plead this defense. Admittedly the averments are sufficient but for one consideration, which plaintiff now urges for the first time. From the pleadings it appears that defendant is a corporation not organized under the laws of California. A statute of that state (Session Laws 1917, p. 371) provides that a foreign corporation not having complied with the requirement that it file with the secretary of state a designation of an agent in the state for the service of process running against it, shall not have the benefit of the statute of limitations. Defendant neither pleaded nor proved such compliance, and plaintiff contends that therefore the statute of limitations is not available to it. Upon the question of the burden of pleading and proof in such a case, there would seem to be no clearly decisive ruling by the Supreme Court of the state, and we do not find necessity for deciding it here. As we have seen, plaintiff, in his first cause of action, at least appears to have recognized the capacity of defendant to plead the statute, for he made a general anticipatory averment. And all the way through the procedure, to judgment, the case was tried upon that theory. At no time did plaintiff suggest or intimate the theory upon which he now relies, even when the court instructed the jury at some length upon the contrary theory. Such an issue involves a fact of public record equally open to both parties, and now to affirm a judgment for a reason apparently never thought of by the lower court or either party to the controversy would hardly be consistent with the spirit of modern judicial administration. Very generally is applied the rule that a theory accepted and acted upon by all in the trial court cannot be repudiated in the appellate court. Peck v. Heurich, 167 U. S. 624, 17 S. Ct. 927, 42 L. Ed. 302; Westlake Merc. F. Co. v. Merritt (Cal. App.) 262 P. 815.

The instructions given on the subject of the statute of limitations fairly left to the jury the question of when the plaintiff discovered, or as a reasonably prudent man he should have discovered, the facts constituting the alleged fraud, and we therefore find no reversible error in respect of the statute of limitations.

At the close of plaintiff's case, the defendant moved for a nonsuit or instructed verdict, which was denied. Whether the ruling was correct or incorrect is a question we cannot now consider, for defendant proceeded to put in its evidence, and by so doing, under a well-settled rule, it waived its motion.

Defendant argues several features of the instructions given, in respect to which, however, no exceptions were taken.

To the refusal of the court, however, to give certain requested instructions, it took timely and appropriate exceptions. Of the five requests appearing in the transcript the last was given in substance. The fourth states too narrowly the rule of caveat emptor, and the third is thought to be too broad and too unqualified a statement of the rights and obligations of the purchaser in respect of statements made by the seller touching the value of the property sold. Incidentally, this principle will be referred to in discussing the other two requested instructions which are as follows:

(1) "The essence of the cause of action for deceit consists in the fact that the false representations were made with intent to deceive, such intent being a necessary element to constitute actual fraud. It must appear from a preponderance of the evidence that the false representations, if any, were made by defendant with a fraudulent intent, and for the purpose of inducing the plaintiff to act upon them.

(2) "I instruct that the general assertions or expressions of a seller in commendation of his land and bragging upon it, commonly called 'dealers' talk,' do not constitute any ground for an action of deceit or fraud. Such statements are generally regarded in law as mere expressions of opinion, upon which a purchaser cannot safely rely."

Not only did the court decline to give these requests, but the trend of the instructions given was to the contrary. Indeed, it is difficult to read the instructions without reaching the conclusion that the court intentionally excluded the element of intent. For example, after referring at length to the representations made as to the fruit growing adaptability of the land, the court advised the jury:

"There is no reason to doubt, and it is proven that that representation is made, and the important question is, was it true or was it not true."

And again at the same subject:

"The main question is was that representation false. The plaintiff and his witnesses insist that it was."

And again:

"That is the principal point. If you determine by a preponderance of the evidence that the land is not well adapted for the growing of fruit trees, then plaintiff is en-

titled to recover, provided the land was not worth as much as he paid for it for other purposes."

And again:

"The plaintiff must prove the charge that the representation was false, viz., that the land was not well adapted to commercial orchard * * * If that is proven, it is a false representation and the defendant can be held liable for it because the land was there; they had held it for years; they were experts, and must be presumed to know the character of the land. At least, if they didn't, they did not have the right to go out and represent to the world that it is proven that these lands were well adapted to commercial orchards, which they did represent in the books which are in evidence. So if you find the representation was false where it was made, if it was false, then the next question will be: Was the plaintiff damaged?"

Passing to the issue of the representation of value, the court said "was the land worth what he paid for it, $350.00 an acre?" After referring at some length to the conflicting testimony as to the actual value of the land, and the considerations entering into such an issue, the court further said:

"That is for you to determine. If you find that the representation was false, and that the land was worth less than $350.00 an acre, the plaintiff has been damaged and in the amount which will be the difference between whatever you find the land was worth at that time and the $350.00 that he paid for it."

In short, the jurors were given to understand as a matter of law that, if the representation as to the availability of the land for raising deciduous fruits in commercial quantities or as to its value—both of which representations necessarily involve judgment and opinion—was found by the jury to be incorrect or untrue, the plaintiff was entitled to recover, regardless of the question of defendant's intent or good faith or the reasonableness of the representation.

We think it was error to decline the requested instructions and to give the instructions referred to clearly out of harmony therewith. Indeed, were the allegation as to misrepresentation of value the only charge of fraud, we would be inclined to the view, as a matter of law, that defendant would have been entitled to a dismissal of the action. That is to say, if it was assumed that there was no misrepresentation of any fact material to the ultimate question of value, defendant's direct representations as to the value of the property should be held to be nothing more than expressions of opinion upon which, under the circumstances disclosed by the record, plaintiff had no right to rely. Market value in certain fields is undoubtedly a question of fact, and that is particularly true of commodities which are daily sold upon the open market. For example, for one to represent wheat to be of a value of $1 per bushel when it is being commonly bought and sold upon the market for 75 cents would constitute a misrepresentation of fact. But, in essence, the ultimate question of the value of real estate is generally a matter of opinion only. The parties here so assumed, for they both offered in evidence opinion or expert testimony. True, an assurance that a piece of land is of a stated value may, under some circumstances, be treated as a fraudulent representation, but such a case is the exception rather than the rule. To constitute the exception it is not sufficient that the vendor have greater information or superior judgment. Generally it must appear that the land is remotely situated, or, for other reasons, the sources of information are not reasonably available to the purchaser, and, believing that for such reasons the purchaser will not investigate for himself, the seller takes advantage of him by representing a value known by him to be fictitious. The narrow range of the right is recognized even in the cases where a plaintiff has been permitted to recover under exceptional circumstances. See Crandall v. Parks, 152 Cal. 772, 93 P. 1018; Nichols v. Moore, 181 Cal. 131, 183 P. 531; Herdan v. Hanson, 182 Cal. 538, 546, 189 P. 440.

Plaintiff here was a mature man, apparently intelligent, and with long practical experience as a farmer. He did not act precipitately; the negotiations extended over a considerable period at his home in Wisconsin; he was unwilling to act upon the representations there made to him, but came to California to see and investigate for himself; the property in question was not located in a remote, uninhabited region, but was in an old, thickly settled community, and close by a city of approximately 100,000 inhabitants. The land was open to his inspection, and he inspected it and appraised the surrounding conditions. Fruit growing in California is not a new or untried industry. Upon every hand, easily accessible to him, were bankers, experienced real estate men, and farmers and fruit growers of long experience in California. For many years fruit growing had been one of the principal industries of the state, and undoubtedly there were publications containing dependable data with reference thereto. Had plaintiff made wide inquiry, he would have doubtless discovered a great diversity of view as to the

value of the land. That is, because the value of such property is essentially a matter of opinion—there is no standard or yard stick for its measurement—experienced, disinterested men having possession of all the facts might in good faith differ widely. Even now at the trial below the experts so differed, and the verdict clearly implies that with all the information before them the jurors found that the value was but little below what defendant represented it to be.

Under the circumstances stated, to hold that, after a lapse of years, the plaintiff may recover upon the ground alone that he was deceived by the representation touching value, would result in the utmost uncertainty and confusion in real estate transactions. As was aptly said in Konda v. Fay, 22 Cal. App. 722, 136 P. 514: "Statement as to value, expressed not as an opinion but as an existing fact material to the transaction, becomes an affirmation of fact, when no opportunity is at hand to ascertain the value otherwise than from statements; but there is no rule that where parties to an exchange have an equal opportunity to determine value, one may neglect the opportunity and subsequently avoid the transaction merely because an inflated value is fixed by the other party." And see, also, Phelps v. Grady, 168 Cal. 73, 79, 80, 141 P. 926.

█ While measurably analogous, the representations touching the adaptability of the land for the production of fruits have a somewhat different footing. The answer to the ultimate question undoubtedly calls for the exercise of judgment, and is in a large measure the subject of opinion. Here again both parties recognized that such is its inherent character by introducing opinion testimony. Without fully analyzing the issue as presented by the record, it will suffice to say that it involves certain factors of fact with which the defendant was, or was bound to be, familiar, and concerning which it may not have been reasonable to require plaintiff to make full investigation before entering into the contract. Such a demand would have imposed upon him the expense and burden of investigating through scientific and industrial experts soil conditions, soil properties, and horticultural requirements concerning which he was not qualified to judge. The literature put out by defendant was positive as to certain material conditions and silent as to others. Upon the whole, we think there was a question for the jury. But it was within a comparatively narrow range. It must be borne in mind that the action is not one for breach of warranty but for deceit;

and deceit by a representation that essentially involves the element of judgment or opinion. With the facts of soil texture and chemical components before them, and the nature and extent of the underlying strata, experts might and do, in fact, differ as to the adaptability of the land for successful fruit raising. Suppose that before the defendant undertook the enterprise or entered upon its sales campaign it fairly sought the judgment of soil experts and experienced fruit growers in California, and others well informed as to land and horticultural values, and received from the first group the opinion that the lands are well adapted to the production of deciduous fruits in commercial quantities, and from the second the opinion that, under all the conditions, $350 per acre would not be an unreasonable price, and thereupon in its sales campaign, acting in good faith and having no reason to discredit such opinions, it made the representations here charged, would it be liable as for deceit or fraud if later it turned out that both groups, according to the testimony of still other experts, or even as shown by actual experience, were mistaken? Had the jurors wholly discredited the opinions of plaintiff's experts, as apparently they did in large part, would it necessarily follow that they gave such opinions deceitfully or fraudulently? But, if not, how can we hold that, because a preponderance of the evidence now, after years of additional experience, is to the effect that the lands are not wholly suitable for commercial horticulture, it is conclusively established that a representation five or ten years ago to the contrary was fraudulently made?

█ Without further discussion, our conclusion is that, if defendant reasonably believed that the lands were as they represented them to be, and in good faith made representations consistent with such belief, it cannot be charged with actionable fraud. Of course, it cannot with impunity make reckless representations; considering the nature of the transactions and the serious consequences to purchasers if the lands are not suitable for fruit raising it was bound to take reasonable care to see that its belief was well founded. That much, good faith and due regard for the rights of those with whom it dealt required.

But as we have seen in declining the instructions requested and in giving those to which we have referred the court excluded from consideration entirely the question of intent and good faith. That, we think, constituted prejudicial error, and accordingly the judgment must be reversed.