## SACRAMENTO SUBURBAN FRUIT LANDS CO. v. TATHAM et ux.*

### No. 5852.

Circuit Court of Appeals, Ninth Circuit.

May 19, 1930.

See, also, 40 F.(2d) 897, 899.

Butler, Van Dyke, Desmond & Harris, of Sacramento, Cal., and E. P. Kelly, of Minneapolis, Minn., for appellant.

Ralph H. Lewis and George E. McCutchen, both of Sacramento, Cal., and Otis D. Babcock, of Sacramento, Cal., for appellees.

Before DIETRICH and WILBUR, Circuit Judges, and NORCROSS, District Judge.

DIETRICH, Circuit Judge.

In its background this suit is like Sacramento Suburban Fruit Lands Co. v. Melin and Companion Cases, 36 F.(2d) 907 to page 950. It was commenced on September 11, 1928. The plaintiffs (appellees) are husband and wife, and in January, 1924, were living in Minnesota, at which time and place they contracted with defendant to purchase fifteen acres of the Rio Linda tract, near Sacramento, Cal., at $375 per acre. They had had some experience in farming in the East but none in California. They left Minnesota and came to Sacramento in February, 1924. Having inspected the fifteen acres described in their contract and being dissatisfied therewith, in the exercise of the right they had reserved they selected in lieu thereof another parcel of the same area and at the same price. As in most of the other cases they allege in their complaint that they were fraudulently induced to make the purchase by false representations to the effect that the land was of the value of $375 per acre, and that it was well adapted to the raising of fruits of all kinds in commercial quantities. In that connection, however, it is to be noted that they expressly aver that were the land as represented in respect of quality and adaptability, it would have been worth fully what they paid. But, they allege, because of a thick stratum of hardpan very near the surface, it is wholly unsuited for fruit raising and consequently was not worth in excess of $50 per acre. They also claim to have expended in improvements the aggregate sum of $12,835 and, by a course of reasoning not entirely clear, they reached the conclusion, as stated in the prayer of their complaint, that they had suffered a loss in the amount of $18,800, to which they added $5,000 claimed as punitive damages. To the general verdict for $7,000 was appended a special finding, submitted by the court, that when purchased the unimproved land was of the value of $1,125, or $75 per acre. No punitive damages were awarded.

It is first assigned that the trial judge erred in overruling appellant's objection that he was disqualified by reason of personal bias and prejudice from presiding at the trial. As grounds for the objection, in its affidavits, it exhibited only incidents and rulings of the judge in the course of prior trials of numerous other cases against it of like character. See the Melin and Companion Cases referred to supra. But even if we assume such rulings to have been erroneous, they cannot be held to disclose "personal bias" in the statutory sense. Ex parte American Steel Barrel Co., 230 U. S. 35, 33 S. Ct. 1007, 57 L. Ed. 1379; Craven v. United States (C. C. A.) 22 F.(2d) 605.

There is also an assignment involving a group of exceptions to rulings upon objections to the testimony of a witness by the name of Jones, produced by plaintiffs as an

*Rehearing denied July 13, 1930.

expert touching land values and damages. In considering these exceptions it is to be borne in mind that the Rio Linda tract lies near Sacramento, a city of considerable size, and that for a home site it has the advantages and conveniences incident to such a location; and furthermore, aside from the question of its adaptability for fruit raising, one of the inducements for its purchase was the consideration that the raising of poultry in that vicinity on a commercial scale could be successfully and profitably carried on. Indeed, it is to be inferred from the plaintiffs' testimony that having in mind the climatic conditions, all the way through they placed great emphasis upon this consideration and at first were disinclined to purchase an acreage greater than was necessary for a poultry enterprise. Though now contending that until about three years after they made the purchase they had no intimation or suspicion that the land was not well adapted to fruit raising on a commercial scale, they have set out not more than fifty fruit trees, but provided extensive facilities for the poultry business; and they make no contention that any false representations were made on that subject or that the tract was not well adapted to that purpose. As we have seen, they expressly allege that were the land also adapted to the raising of fruit in commercial quantities, it would have been worth the price they paid. If in this respect defendant's representations were false, as they allege, their direct damage is to be measured by such value as this quality would contribute to the $375 per acre. In other words, the inquiry would be how much less than $375 was the tract worth by reason of the fact that though valuable for other purposes it cannot also be used for the raising of fruit in commercial quantities.

In the examination of Jones this posture of the issue seems to have been wholly overlooked. He had lived in a nearby town since 1922, and was engaged in the insurance and real estate business. He dealt in farm lands almost exclusively, including fruit lands in small parcels, and was somewhat acquainted with the Rio Linda tract. He first testified that the "reasonable market value" of the plaintiffs' lot in the early part of 1924 was from $30 to $35 per acre. He then testified over repeated objections that in the spring or summer of 1924, after plaintiffs had put improvements thereon, the fair and reasonable value of the land as so improved was probably not over half the cost of the improvements or "probably $5,000.00 or $6,000.00." Thereupon the following:

"Q. Now, Mr. Jones, you have observed other fruit orchards in that general locality and the character of and improvements placed on them? A. Yes.

"Q. Do you know what improvements are usual on fruit ranches out in that locality or in the county generally? A. Well, it depends on the district.

"Q. Well, do you know them out there around Fair Oaks? A. Yes, sir, I do; very well.

"Q. Now, assuming that land was actually worth $375.00 an acre and the land was especially well adapted to raising fruit, would those be proper and ordinary improvements to place on it?

"Mr. Kelly.—Object to that as incompetent, irrelevant and immaterial, no foundation, not within the issues; not the measure of damage; and the witness is not qualified.

"The Court.—You may answer. Overruled."

For reasons other than the general one hereinbefore suggested, the question was objectionable. The evidence did not and does not warrant a finding that the land was represented as being "especially well adapted to raising fruit." There is some testimony of a representation that it was especially adapted for Kadota figs, meaning, as we understand, that it was better adapted to raising this variety of figs than other fruit. Nor was the witness competent to testify what would be "proper improvements." Possibly if he had the requisite knowledge he might, with propriety, have been permitted to testify as to the character and cost of the buildings customarily constructed on small fruit tracts in that vicinity in 1924, but to ask him to assume that the tract possessed extraordinary fruit-raising properties and was "actually worth" $375 per acre, and upon that assumption to permit him to express an opinion that plaintiffs, with perfect propriety, constructed thereon a dwelling house and other buildings at a cost of approximately $13,000, is quite a different matter.

Furthermore, upon cross-examination, it was made clear that when he put a value of $30 or $35 an acre upon the bare land, he was talking about what he thought it ought to be sold for. He knew of no actual sales for less than the price defendants procured and the lowest offer to sell he had knowledge of was $100 per acre. After so stating he was asked: "Q. And as opposed to that you are now stating what your opinion is, what you think the actual value is; is that right?" And he answered: "That is right, yes."

The court having at this juncture intimated the view that the testimony should be stricken, counsel for plaintiff asked for and was granted leave to put additional questions, and at the outset the witness again frankly stated that, "in making those estimates of value I consider what the land will produce," adding, upon being still further interrogated, that he also considered what land could be bought for and had sold for in "other districts around there," but concluded with the statement that, "the land could not bring more than its actual value except as it may have some potentialities," etc. To a suggestion at this point by counsel for plaintiffs that the witness "had qualified," the court intimated a contrary view, with the comment that apparently the witness was fixing his market value by what he called actual value, which was not the criterion. Thereupon, having obtained leave for further interrogation, counsel for plaintiffs by means of highly leading questions was successful in getting the witness to give formal answers which are perhaps technically within the rule of market value but which, upon final cross-examination, he measurably qualified.

Not only is it plain that the witness was in reality expressing his opinion of actual value, that is, what in his judgment the price ought to have been, but, for the reasons already explained, we think the rule of market value was only remotely applicable. If we were to assume that the witness was testifying as to market value there is nothing to indicate that he would have considered the land, even if well adapted to fruit raising, worth $375 per acre; inferences to the contrary are more reasonable. But in the light of the pleading any witness testifying as to value or damage should have been cautioned to testify upon the assumption that if well adapted to fruit raising it had that value. It is thought the exceptions were well taken and the testimony should have been stricken out.

Inasmuch as upon this ground alone the judgment must be reversed, we comment only in so far as is needful for future guidance, upon certain features of the instructions requested or given. While the question is not free from doubt, we are inclined to the view that plaintiffs failed to adduce evidence sufficient to relieve them from the bar of the three-year statute of limitations, and defendant's request for a directed verdict upon that ground should have been granted; of course, a different showing may be made in a new trial. Defendant's requested instructions, Nos. 1 and 6, touching the measure of plaintiffs' duty to investigate was objectionable under the rule enunciated in Sacramento S. F. L. Co. v. Nelson (C. C. A.) 36 F.(2d) 929, 932. Upon the whole, the instructions given are subject to the objection sustained by us in Sacramento Suburban Fruit Lands Co. v. Parker (C. C. A.) 36 F.(2d) 926. In the Melin Case, cited supra, we discussed at some length the status of the charge of false representations touching value. Whatever uncertainty there may have been in that case, under the pleading here clearly the charge of misrepresentation as to value cannot constitute an independent, substantive ground for recovery. If, in point of quality, the land was as represented, it was worth $375 per acre, and plaintiffs would have no cause of action at all. If, upon the other hand, it is not of the quality represented, the false representation in that respect constitutes plaintiffs' cause of action and their only cause of action. Hence the jury should not be advised that plaintiffs may recover if there were false representations as to either the value of the land or its fruit raising qualities. It was not error to deny defendant's request No. 15; and while requests Nos. 11 and 12, upon the subject of mere expressions of opinion and "dealers' talk" are substantially correct and might well have been given, we cannot, in the light of the instructions as a whole, say that the failure to give them in form, constituted prejudicial error. Upon the question of special damages resulting from expenditures for improvements, we should go no further at this juncture than to say that plaintiffs can recover only for such loss, if any, as proximately and reasonably resulted from the fraudulent representations, if any there were. See for the measure of damages in such a case, Smith v. Bolles, 132 U. S. 125, 10 S. Ct. 39, 33 L. Ed. 279, and Sigafus v. Porter, 179 U. S. 116, 21 S. Ct. 34, 45 L. Ed. 113. And we approve the course pursued in the trial below in making this item the subject of a special finding so that it will be susceptible to independent consideration in case there is a verdict for the plaintiffs.

Reversed, with directions to grant a new trial.