**PRICE v. JOHNSTON, Warden.**

No. 9820.

Circuit Court of Appeals, Ninth Circuit.

Feb. 11, 1942.

Homer C. Price, in pro. per.

Frank J. Hennessy, U. S. Atty., and R. B. McMillan, and A. J. Zirpoli, Asst. U. S. Attys., all of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

Homer C. Price filed a petition for writ of habeas corpus in the court below. As a basis for release on such writ he advanced two grounds:

(1) The residence of defendant-petitioner was subjected to an allegedly illegal search and his personal effects and papers were seized in violation of the Fourth Amendment to the Constitution of the United States, and the materials obtained as a result of such allegedly illegal search and seizure were used in evidence against him over his objection and in violation of the Fifth Amendment to the Constitution of the United States; and

(2) The trial judge was allegedly disqualified from hearing the prosecution by reason of prejudice and financial interest in the outcome thereof and that he was divested of jurisdiction by reason of an affidavit of prejudice filed by defendant against him under 28 U.S.C.A. § 25.

The court below issued an order to show cause, to which return was made, with attached exhibits. The petitioner then filed a "Motion to overrule Respondent's return and issue writ." An attorney was appointed to represent the petitioner in the court below. An order denying the application for writ of habeas corpus and dismissing the petition was entered January 14, 1941. The petitioner then made application for permission to proceed in forma pauperis,

and thereafter filed in the same court a "Motion for Findings of Fact and Conclusions of Law." This motion the Court denied. The petitioner then filed an affidavit and request for permission to prosecute a petition for rehearing in said court in forma pauperis. The petition for rehearing was filed and denied by the court. Then followed an application for "bill of review" and motion for extension of time to file an appeal, both of which were denied by the District Court. Thereafter, petitioner appealed to this court from the order denying his application for writ of habeas corpus, and permission was granted him to proceed in forma pauperis.

By statute, 28 U.S.C.A. § 461, and decision (Walker v. Johnston, 312 U.S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830) "the court below was required to grant the petitioner a hearing, if the petition, return and traverse raised substantial issues of fact." O'Keith v. Johnston, 9 Cir., 122 F.2d 554, 555. No hearing was had in this case, the court entering its order on the pleadings filed. The question before us is whether the court below erred in not granting a hearing. To state it differently, Did it appear "from the petition itself that the party" was "not entitled" to a writ, or did the application and traverse raise substantial issues of fact so as to require the court below to grant petitioner a hearing?

Bowen v. Johnston, 306 U.S. 19, 23, 59 S.Ct. 442, 444, 83 L.Ed. 455, states the scope and the purpose of the writ of habeas corpus in the following language: "Where the District Court has jurisdiction of the person and the subject matter in a criminal prosecution, the writ of habeas corpus cannot be used as a writ of error. The judgment of conviction is not subject to collateral attack. [Cases cited.] The scope of review on habeas corpus is limited to the examination of the jurisdiction of the court whose judgment of conviction is challenged. [Cases cited.] But if it be found that the court had no jurisdiction to try the petitioner, or that in its proceedings his constitutional rights have been denied, the remedy of habeas corpus is available. [Cases cited.]" The petitioner-appellant concedes that the trial court had jurisdiction of his person and of the subject matter; he contends that jurisdiction was lost during the progress of the trial by reason of denial of certain constitutional rights to which he was entitled.

We turn to the first question. As a part of his brief in support of his petition for the writ, the petitioner asserts that he had no knowledge of the taking of his papers until they were produced in court. He was represented by counsel during the trial and objection was made to the introduction of these papers in evidence, which was overruled by the trial judge and the papers were introduced. The Fourth and Fifth Amendments to the Constitution of the United States, which are often spoken of by laymen as a unit, were in reality designed to counter two separate evils. The Fourth Amendment secures the people against unreasonable searches and seizures; the clause of the Fifth Amendment in which we are interested provides that no person "shall be compelled in any Criminal Case to be a witness against himself, * * *." As a result of efforts, both legal and illegal, to enforce the Eighteenth Amendment, the Fourth and Fifth Amendments were invoked by saint and sinner alike and the law reports of the period are replete with decisions defining the rights of the people under these latter Amendments. In these criminal prosecutions the Fourth Amendment is called into play through the medium of a motion to suppress the evidence illegally obtained and a motion for a return of the illegally seized matter, seasonably made. Cogen v. United States, 278 U.S. 221, 223, 49 S.Ct. 118, 73 L.Ed. 275; O'Brien, Man.Fed.App.Proc., 3d ed., p. 84. The motions properly are made prior to the trial; but, where the defendant is unaware of the seizure, as Price here asserts he was, the motions should be made at the earliest possible moment. Cf. Gouled v. United States, 255 U.S. 298, 305, 41 S.Ct. 261, 65 L.Ed. 647. The pleadings here do not disclose that either of these motions were made. The Fifth Amendment is invoked by an objection to the effect that the defendant objects to the use of illegally obtained evidence on the grond that he cannot be compelled to be a witness against himself. See Gouled v. United States, supra, 255 U.S. 298, 306, 41 S.Ct. 261, 65 L.Ed. 647. The pleadings here do not disclose that any objection was made on that ground. "It has long been settled," said the Supreme Court in Marron v. United States, 275 U.S. 192, 194, 48 S.Ct. 74, 75, 72 L.Ed. 231, "that the Fifth Amendment protects every person against incrimination by the use of evidence obtained through search or seizure made in viola-

tion of his rights under the Fourth Amendment."

 While it does not appear from the record, for the purpose of this discussion we assume (without deciding it to be a fact) that the admissibility of the allegedly illegally procured evidence was properly called to the attention of the trial judge and that the provisions of the Fourth and Fifth Amendments were invoked by the defendant. We may assume, also, for the purpose of more sharply defining the problems, and solely for· that purpose, that the trial court erred in admitting the materials into evidence, and that the question was saved. It was then incumbent .upon defendant after conviction to appeal—to bring his questions before an appellate court in a direct attack on the judgment under which sentence was pronounced. No appeal from the judgment was perfected and the judgment was carried into execution. At this point it is advisable to again stress that appellant was represented by an attorney throughout the trial, and as the petitioner did not allege the time of his discharge of the attorney, if he was discharged prior to the expiration of time for appeal from the judgment, it must be presumed that he was aware of the necessity of perfecting an appeal if he desired to contest the judgment of conviction.

 If the trial court erred in receiving the materials into evidence, that error was one that could, and should, have been corrected on appeal—a direct attack should have been made. It is the rule that ordinary errors occurring during the course of a trial, such as admission or exclusion of evidence, will not be otherwise examined than on appeal. Failure to appeal, in all ordinary cases, precludes any setting aside of a judgment of a court possessing jurisdiction of the person and of the subject matter in a cause. These legal principles are not controverted by appellant, if we rightly understand his pleadings and brief, but it is contended that because the evidence was objectionable on a constitutional ground, that an error in ruling thereon, ex proprio vigore, divested the trial court of jurisdiction and that its proceedings were thereupon rendered void. The validity of this contention is absolutely essential to appellant's case, for if the negative be the rule, the ruling of the trial court on the evidence was a mere error, however prejudicial, and not available on habeas corpus.

In Ex parte Siebold, 100 U.S. 371, 375, 25 L.Ed. 717, the Supreme Court said:

"This distinction between an erroneous judgment and one that is illegal or void is well illustrated by the two cases of Ex parte Lange (18 Wall. 163 [21 L.Ed. 872]) and Ex parte Parks, 93 U.S. 18 [23 L.Ed. 787]. In the former case, we held that the judgment was void, and released the petitioner accordingly; in the latter, we held that the judgment, whether erroneous or not, was not void, because the court had jurisdiction of the cause; and we refused to interfere."

In the Siebold case it was contended that the prosecution of petitioner was had under an unconstitutional law. The case is, therefore, of no importance to us beyond the above quotation. In the Lange case (18 Wall. 163, 85 U.S. 163, 176, 21 L.Ed. 872), referred to above, the petitioner was discharged on habeas corpus because he had been twice punished for the same offense. The court stated: "The record of the [trial] court's proceedings, at the moment the second sentence was rendered, showed that in that very case, and for that very offence, the prisoner had fully performed, completed, and endured one·of the alternative punishments which the law prescribed for that offence, and had suffered five days' imprisonment on account of the other. It thus showed the court that its power to punish for that offence was at an end." Three other examples of void judgments rendered are also set out in this case as hypothetical cases of what the Supreme Court believed was lack of power in a court to render such judgments. In the Parks case, 93 U.S. 18, 20, 23 L.Ed. 787, also referred to in the Siebold case, supra, it was contended by the petitioner that the act with which he was charged was not a crime within the statute under which he was prosecuted and that, as the District Court of the United States had no common-law jurisdiction of crimes, it was without jurisdiction to try him for the offense. The writ was denied the petitioner. Excerpts from the opinion of the Supreme Court are quoted:

"But the question whether it was or was not a crime within the statute was one which the District Court was competent to decide. It was before the court, and within its jurisdiction. * * *

"The court may err, but it has jurisdiction of the question. * * * It having been held that the regulation of ·the appel-

late power of this court was conferred upon Congress, and Congress having given an appeal or writ of error in only certain specified cases, the implication is irresistible, that those errors and irregularities, which can only be reviewed by appeal or writ of error, cannot be reviewed in this court in any other cases than those in which those processes are given. Now, it has always been held that a mere error in point of law, committed by a court in a case properly subject to its cognizance, can only be reviewed by the ordinary methods of appeal or writ of error; but that where the proceedings are not only erroneous, but entirely void,—as where the court is without jurisdiction of the person or of the cause, and a party is subjected to illegal imprisonment in consequence,—the Superior Court, or judge invested with the prerogative power of issuing a habeas corpus, may review the proceedings by that writ, and discharge from illegal imprisonment.

\* \* \* \* \* \*

"But if the court had jurisdiction and power to convict and sentence, the writ cannot issue to correct a mere error. \* \* \*"

The court then proceeded to distinguish the Lange case, supra, as follows:

" \* \* \* In Ex parte Lange we proceeded on the ground, that; when the court rendered its second judgment, the case was entirely out of its hands. It was functus officio in regard to it. The judgment first rendered had been executed and satisfied. The subsequent proceedings were, therefore, according to our view, void. ·

"But, in the case before us, the District Court had plenary jurisdiction, both of the person, the place, the cause, and everything about it. To review the decision of that court by means of the writ of habeas corpus would be to convert that writ into a mere writ of error, and to assume an appellate power which has never been conferred upon this court." 93 U.S. at page 23, 23 L.Ed. 787.

In Ex parte Nielsen, 131 U.S. 176, 183, 184, 9 S.Ct. 672, 33 L.Ed. 118, the petitioner sought habeas corpus on the ground that he had been twice punished for the same offense. The Supreme Court discussed the Siebold, Lange, and Parks cases, supra, and also Ex parte Snow, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658, another case, similar in some respects to Ex parte Nielsen, arising out of the suppression of polyg-amy in Utah. The following language of the Supreme Court is pertinent:

"In the present case, it is true, the ground for the habeas corpus was, not the invalidity of an act of congress under which the defendant was indicted, but a second prosecution and trial for the same offense, contrary to an express provision of the constitution; in other words, a constitutional immunity of the defendant was violated by the second trial and judgment. It is difficult to see why a conviction and punishment under an unconstitutional law is more violative of a person's constitutional rights than an unconstitutional conviction and punishment under a valid law. In the first case, it is true, the court has no authority to take cognizance of the case; but in the other it has no authority to render judgment against the defendant. This was the case in Ex parte Lange, where the court had authority to hear and determine the case, but we held that it had no authority to give the judgment it did. It was the same in the case of Snow; the court had authority over the case, but we held that it had no authority to give judgment against the prisoner. He was protected by a constitutional provision, securing to him a fundamental right. It was not a case of mere error in law, but a case of denying to a person a constitutional right. And where such a case appears on the record, the party is entitled to be discharged from imprisonment. \* \* \* A party is entitled to a habeas corpus, not merely where the court is without jurisdiction of the cause, but where it has no constitutional authority or power to condemn the prisoner." [131 U.S. 176, 9 S.Ct. 674, 33 L. Ed. 118].

To recapitulate, the attempted prosecution in the Siebold case was under an unconstitutional law and the Lange, Snow, and Nielsen cases involved double jeopardy. Each of these cases clearly demonstrated that the trial court never had jurisdiction to give judgment against the defendant (afterwards petitioner). In the case of Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969, the trial court unquestionably lost jurisdiction when it absented the defendant and his attorney from the courtroom. No criticism may be leveled against these cases; either the trial court never had jurisdiction to render the judgment or, as in the latter case, lost it through a positive violation of constitutional rights of defendant. But the Parks case, supra, where the writ was refused,

is an example of the case where habeas corpus will not lie to relieve from an alleged error committed in the course of trial, which seems to control the situation here.

▮ We have discovered no case on all fours with the case at bar, nor, in all the many cases which we have examined dealing with the Fourth and Fifth Amendments, have we discovered an appellate court declaring a prosecution "void" because a defendant's claims under these Amendments were refused. The usual procedure in attack has been to assign as erroneous the admission of illegally obtained evidence. Cornelius, Search and Seizure, § 249, p. 469. If well taken, the assignment results in reversal. Cf. Agnello v. United States, 269 U.S. 20, 35, 46 S.Ct. 4, 70 L.Ed. 145. But such errors are to be urged on appeal, not on habeas corpus.

▮ When the allegedly illegally procured evidence was offered during the course of the prosecution, and objection was made thereto, it was the duty and the right of the trial judge to rule thereon. The right of a trial judge to make a ruling during the course of a trial carries with it the possibility of ruling wrongly as well as correctly. It is absurd to assert that the jurisdiction of the court hinges upon the mere right or wrong of a ruling on the admissibility of evidence during the course of a trial; that if the court's ruling on an objection made be correct, the court continues to retain jurisdiction, but if it errs, the entire proceeding is void. If the trial court erred, and the error was prejudicial, reversal would follow on appeal, as in other prejudicial error, but the mistake would not thereby deprive the trial court of jurisdiction so that the convicted person, thereafter whenever he saw fit, could launch a collateral attack upon a judgment, valid upon its face. This situation here is readily distinguished from cases where the court never acquired jurisdiction of the defendant, or the subject-matter, or, as in Frank v. Mangum, supra, lost it by absenting the defendant from the courtroom. In the Snow and Nielsen cases, the errors were not such as occurred in the course of a trial—the right petitioners claimed secured them against any trial at all; while, in the Frank case, the prosecution ceased to be a trial under the law the moment the defendant was barred from the courtroom.

▮ The appellant was represented by an attorney at the trial, and it must be assumed that he was informed of his privilege to appeal and the details necessary to perfect such appeal.

There is no merit in the second ground for release presented by petitioner. The statute under which a party may avoid going to trial before a particular judge reads, in part, as follows, 28 U.S.C.A. § 25:

"Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be designated * * * to hear such matter. Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, * * *."

▮ The petitioner contends that because he caused an affidavit to be filed by his attorney for the disqualification of the trial judge, which alleged that the trial judge was a director or trustee or associated or affiliated with a bank in the vicinity of the bank for the robbery of which Price was indicted and that, therefore, prejudice would result to the defendants, the trial judge was required to withdraw from the case. The appellant, judging from his assertions and argument, seems to believe that the filing of an affidavit under 28 U.S. C.A. § 25 automatically disqualifies the trial judge from proceeding further in the case; that the trial judge may not determine for himself the sufficiency of the affidavit. But the trial judge did have the lawful right to pass upon the legal sufficiency of the affidavit. Berger v. United States, 255 U.S. 22, 32, 36, 41 S.Ct. 230, 65 L.Ed. 481; cf. Ex parte American Steel Barrel Co., 230 U.S. 35, 45, 33 S.Ct. 1007, 57 L.Ed. 1379. The allegations of appellant's petition for the writ of habeas corpus indicate that the affidavit of bias and prejudice was insufficient under the statute and, hence, was properly overruled. The statute requires that the bias or prejudice be "personal." The allegations of the affidavit, as disclosed by the petition for the writ, do not indicate a "personal" prejudice or bias against the accused, but charge an impersonal prejudice, and go to the judge's background and associations rather than his appraisal of the defendant personally. This is not enough under the statute, and the affidavit must be here held to have been insufficient under the law. The plain purpose of the statute "was to afford a method of relief through

which a party to a suit may avoid trial before a judge having a personal bias or prejudice against him or in favor of the opposite party. That sought to be relieved against is a personal bias or prejudice—a bias or prejudice possessed by the judge specifically applicable to or directed against suitor making the affidavit or in favor of his opponent." Appellant's allegations reveal that "the facts and reasons advanced in support of the charge of bias and prejudice do not tend to show the existence of a personal bias or prejudice on the part of the judge toward petitioner but rather a prejudgment of the merits of the controversy * * *." Henry v. Speer, 5 Cir., 201 F. 869, 871, 872. See, also, Wilkes v. United States, 9 Cir., 80 F.2d 285, 288, 289; Sacramento Suburban Fruit Lands Co. v. Tatham et ux., 9 Cir., 40 F.2d 894. It is immaterial that the trial judge may have assigned an incorrect reason for his ruling on the affidavit; the ruling was correct, and that is sufficient.

It follows, as a result of the discussion set forth above under each of the two propositions argued by appellant, that the order of the court below denying the petition for writ of habeas corpus must be, and therefore is, affirmed.

HANEY, Circuit Judge (concurring).

I concur in the holding of the majority regarding disqualification of the trial judge. I likewise concur in the result of the holding regarding the alleged unreasonable search and seizure but on a different ground.

The allegations bearing on the latter question are in part:

"* * * that your petitioner's home was searched and a large amount of private papers taken all without petitioner's knowledge as petitioner was confined in jail, that the said papers obtained by said search was presented into evidence against petitioner, that said search was instigated, as later found out, by your petitioner, the day after his arrest, and without a search warrant.

"Your petitioner strenuously objected to said documents being entered into evidence, for the reason that the documents had been obtained by an illegal search of your petitioner's home, without a warrant of any kind * * *".

There is nothing to show whether the officers who seized the papers were federal, state or municipal officers.

Even though the papers might have been seized by state officials in violation of the state constitution, the papers are admissible in a federal trial, and no violation of the federal constitution is shown. Weeks v. United States, 232 U.S. 383, 398, 34 S. Ct. 341, 58 L.Ed. 652. Because of the presumption of correctness attending the trial court's determination, and the fact that a judgment imports verity, I think we should presume that the alleged illegal seizure was made by other than federal officers. Having reached that conclusion, it is apparent that the petition fails to state any grounds for release, and Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830, does not require a hearing because there was no issue of fact.