### CULLEN et al. v. UNITED STATES. *

(Circuit Court of Appeals. Ninth Circuit. October 20, 1924.)

No. 4284.

1. Post office ⊕⇒49—Evidence held to sustain conviction for use of mails to defraud.

Evidence *held* to sustain conviction under Pen. Code, § 215 (Comp. St. § 10385), for using mails in scheme to defraud.

2. Criminal law ⊕⇒434—Partnership books are admissible in evidence against partners.

Partnership books are admissible in evidence against partners, as constituting their acts and declarations, kept by them or under their authority.

3. Criminal law ⊕⇒434—Corporate books held admissible against defendant officers of corporation, notwithstanding general rule.

Corporation books kept by defendants, who were in effect partners operating through instrumentality of corporation, *held* admissible against such defendants, in prosecution under Penal Code, § 215 (Comp. St. § 10385), for use of mails to defraud, notwithstanding general rule.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; J. Whitaker Thompson, Judge.

*Certiorari denied 45 S. Ct. 229, 69 L. Ed. —.

Martin J. Cullen and others were convicted of using mails to defraud, and they bring error. Affirmed.

Alfred L. Bartlett, Thos. P. White, Leo M. Rosecrans, and Otto J. Emme, all of Los Angeles, Cal., for plaintiff in error King.

Schenck & Kittrelle and J. M. Bowen, both of Los Angeles, Cal., for plaintiffs in error Cullen and Dennison.

David V. Cahill and Charles L. Nichols, Sp. Asst. Attys. Gen., for the United States.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. The plaintiffs in error were convicted under an indictment which charged them with using the mails in a scheme to defraud, in violation of section 215 of the Penal Code (Comp. St. § 10385). It is contended that it was error to deny their motions for instructed verdicts of acquittal.

[1] So far as the defendants Cullen and Dennison are concerned, the evidence was amply sufficient to justify the submission of the case to the jury. They purchased at $3.25 per acre 1,120 acres of land, which they had never seen, and they organized a corporation, known as Great Angelus Oil & Land Corporation, with a capital of $250,-000. They had no other assets than the land. They divided it into 4,480 tracts, of one-quarter of an acre each, which they denominated "drill sites," and they offered the drill sites for sale as oil lands at prices ranging from $25 to $100 each. They received from purchasers thereof $147,056.96, out of which they paid to themselves as salaries $61,000. The land was hilly, and was without water, and was covered with a sparse growth of desert brush. The defendants falsely represented it to be oil land; that it was land where "the geologists claimed the widest long channel of oil in California was to be found"; whereas, the facts were that no indication of oil was ever found on the land, and the nearest producing oil well was 47 miles distant therefrom. The defendants, to carry out their representations, drilled on the land a hole 400 feet deep, and falsely represented that they were down 1,300 feet, and expected oil at 1,600 feet. They also falsely represented the land to be good agricultural land, and said it was good for raising "most anything"; that it was "especially good for peaches or fruit of any kind."

As to the defendant King the proof was that he was not a member of the corporation, nor a party to the original scheme, but was engaged as a salesman to sell lots on commission. He was found guilty on the fifth count. He earnestly contends that there was absence of testimony as to his connection with the scheme sufficient to justify the submission of the charge against him to the jury. There was evidence, however, tending to show that King practiced deception in effecting sales of the land. He exhibited a fictitious check for $16,000, which, he said, represented a profit made by a purchaser. As to the land, he represented that it was a "wonderful proposition"; that it was "good for raising anything that any land in California was good for raising things on." In the letter, which is referred to in the fifth count, he wrote to a purchaser: "Now, things are all excitement up by our well; so protect yourself and make payments, as I look for something big." King had been on the ground and he knew the nature of the land. The record contains no denial or explanation of his representations as to the property which he was engaged in selling. Enough appears in the evidence, we think, to justify the trial court in submitting to the jury the question of his complicity in the use of the mails as charged in the indictment.

[2] Error is assigned to the admission in evidence of the corporate books to show the receipts and disbursements of the corporation. It is said that it was error to admit such evidence against the defendants Cullen and Dennison without proof that they authorized the entries or had knowledge thereof. Many cases hold that books of a corporation are not admissible in evidence against an officer or stockholder, unless he is shown to have had knowledge of the entries or authorized the same. But the rule applicable to the present case is, we think, that which obtains in regard to the admission of partnership books. Partnership books are evidence against the partners, for the reason that they are their acts and declarations, kept by them or by their authority, or by their servants under their direction and superintendence.

[3] The defendants Cullen and Dennison were the corporation. They owned the stock, and had entire control and ownership of the corporate property. They were, respectively, president and secretary of the corporation. They passed all the resolutions of the corporation, conducted its correspondence, and managed its activities. They were, in effect, partners operating through the in-

strumentality of a corporation. That they were acquainted with the contents of their books is a justifiable inference. Under such circumstances there was no error in admitting the evidence. Wilson v. United States, 190 F. 427, 111 C. C. A. 231; Parker v. United States, 203 F. 950, 122 C. C. A. 252. The case is unlike Worden v. United States, 204 F. 1, 122 C. C. A. 315. There the admission of corporate books as against a stockholder was held erroneous, in the absence of proof that he had anything to do with the keeping of the books or had any knowledge of their contents, or such connection with the books as to justify an inference of actual acquaintance therewith.

The judgment is affirmed.