## BRADY v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
May 14, 1928.

Rehearing Denied June 18, 1928.

No. 5165.

**1. Post office ⬅35(2)—Use of mails after sale and payment for trust units to allay purchasers' discontent and restore confidence held in furtherance of fraudulent scheme.**

In prosecution for use of mails to defraud public generally by sale of unincorporated trust units or shares, contention that fraud was consummated when units were sold and paid for, and that therefore subsequent use of mails in transmitting to such purchasers the certificates, letters, circulars, and other matter, for purpose of allaying discontent, restoring confidence, and stimulating active support for enterprise, was not in furtherance of fraudulent scheme, *held* without merit.

**2. Criminal law ⬅434—Admitting in evidence books of unincorporated trust against owner of controlling interest for limited purpose held not error, notwithstanding fragmentary character thereof.**

In prosecution for use of mails to defraud by sale of unincorporated trust units, admission in evidence of books of the trust against owner of controlling interest, offered merely as preliminary to testimony of accountant, who analyzed and summarized their contents for substantially only purpose of showing relation between receipts from unit sales and sales expenses, *held* not error, notwithstanding fragmentary character of such records, in view of testimony of bookkeeper, who identified books, that in making entries she acted under owner's directions.

**3. Criminal law ⬅444—Admitting in evidence, in mail fraud securities selling case, written testimonial to defendant's high character and business capacity, which apparent writer denied writing, held not error.**

In prosecution for use of mails to defraud by sale of unincorporated trust units, admission in evidence of written testimonial to the high character and business capacity of defendant, purporting to have been written by prominent oil operator, but which such operator testified he did not sign, *held* not error, where a witness testified that he made large investment for himself and his mother in enterprise after such letter was shown to him, notwithstanding letter was not directly shown to his mother since he was her agent.

**4. Criminal law ⊜⊐400(8)—Permitting trustee of incorporated trust to testify, in mail fraud case, what part of sales receipts was absorbed by expenses, held not error.**

In prosecution for use of mails to defraud by sale of unincorporated trust units, permitting one of trustees to testify directly as to amount of sales receipts which were absorbed by sales expenses *held* not error, where such issue was material.

**5. Criminal law ⊜⊐730(6)—Refusal, in mail fraud securities selling case, to permit defendant's counsel to go into financial affairs of another corporation after district attorney's statements, held not error.**

In prosecution for use of mails to defraud by sale of unincorporated trust units, trial court's refusal to permit defendant's counsel to go at length into financial affairs of another corporation in which defendant was interested, after district attorney asserted that he was going to show diversion of funds of trust to that corporation, *held* not error, where district attorney's statement was neutralized by adverse expressions of court, and government made no such showing.

**6. Criminal law ⊜⊐829(3)—Defendant's requested instructions, defining acts authorizing conviction for mail fraud securities selling scheme, held sufficiently covered by instructions given.**

In prosecution for use of mails to defraud by sale of unincorporated trust units, defendant's requested instructions that defendant could not be found guilty unless he acted with bad intent, and that untrue representations innocently made and mere carelessness or imprudence in corporate management would not authorize conviction, which were refused by court, *held* sufficiently covered by instructions given.

**7. Criminal law ⊜⊐586—Jury ⊜⊐131(2)—Witnesses ⊜⊐267—Continuance, limitation of cross-examination, and interrogation of jurors respecting qualifications are within court's discretion.**

Granting or refusing application for continuance, limitation of cross-examination, and interrogation of jurors touching their qualifications are within trial court's discretion.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; George M. Bourquin, Judge.

Murray G. Brady was convicted of unlawful use of mails in promotion of scheme to defraud by sale of units or shares in an unincorporated trust, and he brings error. Affirmed.

Roy L. Daily, of San Francisco, Cal., for plaintiff in error.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

26 F.(2d)—26

DIETRICH, Circuit Judge. Adjudged guilty upon 12 counts charging the unlawful use of the mails in the promotion of a scheme to defraud, defendant brings error. The charges all relate to a single enterprise.

Defendant organized in California an unincorporated trust, known as the "Brady Sure Shot Oil Company," capitalized at $800,000, divided into 8,000 unit shares, of the par value of $100 each. He held the controlling interest, was its president, and dominated its activities. Under his guidance it acquired six oil and gas leases upon divers tracts of land in California. The object of the company was to develop these lands, the value of which was unknown, into productive properties, and the funds for that purpose were to be secured by the sale of shares or units in the trust to the public. These sales were to be and were promoted, so the indictment alleges, by divers false and fraudulent representations and promises, the details of which it is unnecessary to explain, for the sufficiency of the indictment was not and is not questioned, nor at the trial was the sufficiency of the evidence challenged by a motion for a directed verdict or in any other manner. [1] If, without appropriate ruling and exception thereto, we consider the contention now made for the first time that the evidence was insufficient, we find that the only point urged is that, in respect to the majority of the counts, the use of the mails consisted in transmitting, to persons who had subscribed and paid for trust units, certificates thereof, or letters, circulars, and other matter for the purpose of allaying discontent, restoring confidence, and stimulating active support for the enterprise; the argument is that the fraud, if any there was, was fully consummated when the units were sold and paid for, and hence such use of the mail was not had in furtherance of the fraudulent scheme. But that is to ignore the fact that the scheme alleged was not to sell specific units to designated persons, but fraudulently to sell stock generally to the public. It was continuously in the course of execution, after as well as before the mails were so used, and that the specific uses alleged and proved tended to contribute to subsequent execution cannot be doubted. Such being the nature of the case, manifestly, United States v. Kenofskey, 243 U. S. 440, 37 S. Ct. 438, 61 L. Ed. 836, relied upon by the defendant, is inapplicable.

Specification 1, involving permission by the court to ask certain leading questions, 4, involving the declination of the court to

require certain preliminary information before permitting a witness to relate a conversation he had with the defendant, and 7, criticizing the reference to certain persons as being "successful" rather than "practical" oil men, are thought to be too unsubstantial to require discussion.

[2] Specifications 2, 3, and 8 relate to the use of certain books purporting to be, and identified by a witness as being, the account books and records of the company. The identifying witness was a bookkeeper employed by the defendant for the company, to set up its books. She acted under his direction, and made the entries from sources and data furnished or designated by him. If they were measurably fragmentary, that was for the reason, as explained by her, that the information he supplied was incomplete. They were offered only as a preliminary to the testimony of an accountant, who had analyzed and summarized their contents, and apparently they did not go to the jury, but were produced in order that from them the defendant could check the tabulated data so prepared and used by the accountant in giving his testimony. Substantially the only purpose of the testimony was to show the relation between the receipts from unit sales and the sales expenses. Technically, at least, the company was not a corporation, but aside from that consideration we think that what was done finds warrant in Cullen v. United States (C. C. A.) 2 F.(2d) 524, and Osborne v. United States (C. C. A.) 17 F.(2d) 246. It may be added that one of the duties of defendant as a trustee was to cause to be kept complete and accurate books of account, and if, as a result of his neglect in that respect, the books are somewhat fragmentary, he is scarcely in a position to complain, so long as it appears that they accurately embody all the data he supplied.

[3] Specifications 9 and 10 involve reception of a written testimonial to the high character and business capacity of defendant, purporting to have been given by one King, who seemingly was an oil operator of some prominence in Oklahoma. A witness, Fidele Meyer, testified that at the outset he was one of the trustees of the Brady Sure Shot Company, that he was 26 years of age, and that he and his mother, whose funds apparently he was handling, invested in or advanced to the enterprise approximately $50,000, part of which was for trust units. He further testified that at some time, inferably during the early stage of the enterprise, the defendant had exhibited to him a bunch of letters, including this testimonial. Defendant's only purpose in so doing must have been to inspire confidence and induce investment. It is quite immaterial that the letters were not shown directly to Meyer's mother; he was her agent. As a witness King testified that he had not signed the testimonial, and, in direct conflict to statements contained therein, that he scarcely knew defendant. The evidence was clearly relevant to the issues in controversy.

[4] 11. What part of sales receipts was absorbed in sales expenses was a material issue. Expenses were incurred in the maintenance by the company of numerous offices in and in the vicinity of San Francisco. In allocating such expenses it became necessary to know for what purpose the several offices were maintained, whether for sales or for operation. There was no error in permitting Casperson, one of the trustees, to testify directly upon that subject.

[5] 12. Because the district attorney, in arguing for the right to put in certain testimony relative to an organization, called the Mutual Drilling Company, in which defendant was heavily interested, asserted that he was going to show diversion of the Sure Shot Company's funds to that company, the later refusal of the court to permit defendant's counsel to go at length into the financial affairs of the Drilling Company is assigned as error. But at and immediately after the district attorney's statement it was neutralized by adverse expressions from the court, and, in fact, the government made no such showing.

Specification 13, involving declination of offers to show that, after the event, defendant had made some attempts at reparation, and No. 14, involving reception of testimony in rebuttal in respect to statements made by defendant which he testified he did not remember, are without substance; nor can we say that the court abused its discretion in the limitation put upon the length of cross-examination in the particulars pointed out under specification 16.

At the close of the final instructions to the jury, the court put to counsel for the defendant the direct question whether he desired any exceptions, to which he replied, "No." Even if it were conceded that there is some ground for the criticism that in certain respects the instructions were argumentative, there was no such plain error as, in the absence of exceptions, would warrant review.

Though no exceptions were taken to the

failure of the court to give them, we have carefully examined the instructions requested by defendant. Of those numbered 1 to 12, inclusive, it may be said that some of them are not even mentioned in the brief, and none of them is argued. They all have to to do with general rules of criminal trials and in the main their subject-matter was sufficiently covered by the instructions given. Both 9 and 10 would, if not qualified or amplified, be likely to mislead, and the latter is appropriate only to a case resting upon circumstantial evidence.

[6] The other requests, 13 to 18 inclusive, are argued together and may be so disposed of. They are to the effect that defendant could not be found guilty unless he acted with bad intent, and that untrue representations made innocently, and mere carelessness or imprudence in corporate management, would not be sufficient upon which to rest a conviction. While no formal instruction of that tenor was given, we are convinced that no reasonably intelligent juror could have failed to understand from the charge generally that such is the law. After reading to the jury the statute, which in itself conveys such an impression, the court explained that "the device or scheme or artifice which the law has in mind is any plan by false representation, false promises, false pretenses or fraudulent representations, to gain money," etc. To the ordinary mind this language undoubtedly conveys the notion, not of bad judgment merely, not of unwitting error or of exuberant confidence, but of bad faith and intentional deceit. Discussing the advertising matter sent out the court said: "And if it is false, and * * * was known to the defendant to be false," etc., and in another connection it was said, "You will take that into consideration in determining the good faith of the defendant." Again, in speaking of still another incident, "Maybe it was only negligence; and, if it was no more than negligence, he would be guilty of a breach of trust, but not guilty of a fraudulent scheme." And still again: "That the company failed, that is not vital either. It is a circumstance."

[7] In the course of his rambling brief, defendant comments upon other "points," including the denial of his application for a continuance, the limitation by the court of his cross-examination in certain instances, and the interrogation of jurors touching their qualifications, but in such matters the trial judge necessarily exercises a measure of discretion, and no abuse is shown.

Judgment affirmed.