## WILKES et al. v. UNITED STATES.
### No. 7466.

Circuit Court of Appeals, Ninth Circuit. Nov. 8, 1935.

Petition to Modify Denied Dec. 4, 1935.

Matt I. Sullivan, Theo. J. Roche, and Sullivan, Roche & Johnson, all of San Francisco, Cal., for appellants McKeon.

J. E. Simpson, W. E. Simpson, and H. L. Carnahan, all of Los Angeles, Cal., for appellants Shingle and Brown.

Buel R. Wood, of Los Angeles, Cal., for appellants Wilkes and others.

J. W. Kearby, of Los Angeles, Cal., for appellant Myers.

Peirson M. Hall, U. S. Atty., of Los, Angeles, Cal., and J. Albert Woll, Sp. Asst. to the Atty. Gen., for the United States.

Before WILBUR and MATHEWS, Circuit Judges, and ST. SURE, District Judge.

MATHEWS, Circuit Judge.

The indictment in this case was in fifteen counts, fourteen of which charged Alfred G. Wilkes, E. Byron Siens, John McKeon, Robert McKeon, Maurice C. Myers, William J. Cavanaugh, Fred Shingle, Horace J. Brown, and ten other defendants with using the mails in execution of a scheme to defraud (Criminal Code, § 215, 18 U.S.C.A. § 338). The fifteenth count charged them with conspiring to commit the offenses described in the other fourteen counts (Criminal Code, § 37, 18 U.S.C.A. § 88). Wilkes, Siens, and Cavanaugh were convicted and sentenced on counts 2, 6, and 15, Myers on count 8, Shingle and Brown on count 12, and the McKeons on count 15. All the named defendants have appealed.

The scheme charged in the indictment was, in substance, that the defendants would organize, dominate, and control the Italo Petroleum Corporation of America, would issue and sell the capital stock there-

of, and would defraud said corporation and its stockholders by wrongfully receiving for themselves, as a bonus for making a loan to said corporation, 80,000 shares of its capital stock; by causing said corporation to purchase for an excessive consideration the assets of the Brownmoor Oil Company and to issue 1,200,000 shares of its stock in part payment therefor; by wrongfully and unlawfully receiving for themselves a part of said 1,200,000 shares of stock and the proceeds thereof; by forming a syndicate and causing said corporation to issue for the benefit of said syndicate 6,000,000 shares of its capital stock for a sum not exceeding $3,500,000; by wrongfully receiving for themselves secret profits from the sale of said 6,000,000 shares of stock; by causing said corporation to purchase for an excessive consideration certain assets of the McKeon Drilling Company, Inc., and to issue 4,500,000 shares of its stock in part payment therefor; and by secretly receiving for themselves 2,500,000 of said shares and the proceeds thereof. The scheme had other ramifications which we deem it unnecessary to state.

Appellant Myers demurred to count 8 of the indictment on the ground that it does not inform him in the English language of the nature and cause of the accusation against him. The overruling of his demurrer is assigned as error. The assignment is without merit. Count 8 charges, in the English language, that the defendants, having devised the scheme above referred to, did, for the purpose of executing the same, cause to be delivered by the post office establishment of the United States, at Pasadena, Cal., in a postpaid envelope addressed to La Vinna Hill Hopkins, an eleven-page pamphlet, which began with the words "Report of the directors of Italo Petroleum Corporation of America and subsidiary companies for the period October 31, 1928, to July 31, 1929," and ended with certain Italian words quoted but not translated in count 8, and was signed "Italo Petroleum Corporation of America, John B. De Maria, Presidente."

The sole objection to count 8 is that it contains no translation of the Italian words quoted therein. Such a translation was unnecessary. The words are used merely to identify the pamphlet alleged to have been mailed. They do not constitute the gist of the offense. It was not necessary to set out the contents of the pam-

phlet or any part thereof. Durland v. United States, 161 U.S. 306, 315, 16 S.Ct. 508, 40 L.Ed. 709; Scheib v. United States (C.C.A.) 14 F.(2d) 75, 77; Tenenbaum v. United States (C.C.A.) 11 F.(2d) 927, 928; Wilson v. United States (C.C.A.) 275 F. 307, 312; Hume v. United States (C.C.A.) 118 F. 689, 695. Much less was it necessary to furnish a translation. We think the pamphlet was sufficiently identified. If appellant desired further identification, he should have demanded a bill of particulars. Durland v. United States, supra.

Appellants Shingle and Brown demurred to count 12 of the indictment on the ground that the offense therein charged was charged to have been committed in the Northern district of California, not in the Southern district, where the indictment was found, and was, therefore, not within the jurisdiction of the trial court. The overruling of this demurrer is assigned as error. Count 12, after reiterating the allegations of the first count respecting the scheme devised by defendants, alleges: "That the defendants, having devised and intended to devise the aforesaid scheme and artifice, in and for the purpose of executing the same, did, on or about the 23rd day of January, 1929, knowingly, wilfully and unlawfully cause to be placed in the United States Post Office at San Francisco, California, and cause to be delivered by the Post Office Establishment of the United States at Los Angeles, California, in the Central Division of the Southern District of California, a certain letter in a postpaid envelope addressed to Mr. O. J. Rhode, at 727 West Seventh Street, Los Angeles, California. * * *"

■ Appellants argue that the offense charged in this count is that of causing the letter to be placed in the post office at San Francisco in the Northern district of California, to be sent and carried by the post office establishment of the United States. We do not think so. The charge, as we view it, is that of causing the letter to be delivered by mail at Los Angeles in the Southern district of California. Although count 12 does not, in so many words, allege that the letter was delivered "by mail," it does allege that it was delivered by the post office establishment of the United States. This is equivalent to saying that it was delivered by mail. McLendon v. United States (C.C.A.) 14 F.(2d) 12, 14. The statement that the defendants caused the letter to be placed in the post office at San Francisco is merely explanatory, showing how the letter came to be in the mail. Salinger v. Loisel, 265 U.S. 224, 233, 44 S.Ct. 519, 68 L.Ed. 989; Horner v. United States, 143 U.S. 207, 213, 12 S.Ct. 407, 36 L.Ed. 126.

It is further argued by these appellants that, if count 12 be regarded as attempting to charge the offense of causing delivery of the letter in question, it is defective in not alleging that the defendants "knowingly" caused such delivery. The point is not well taken. Count 12 alleges that the defendants "did * * * knowingly * * * cause to be placed in the United States Post Office * * * and cause to be delivered by the Post Office Establishment of the United States" the letter therein referred to. This means that both acts (causing the letter to be mailed and causing it to be delivered) were done knowingly. In so alleging, it was not necessary to use the word "knowingly" twice. Once was enough.

■ Appellants John McKeon and Robert McKeon demurred to count 15 of the indictment on the ground that the facts therein alleged are insufficient to constitute a violation of any law of the United States. The overruling of their demurrer is assigned as error. Count 15 charges a conspiracy to commit the offense charged in each of the other fourteen counts, namely, the offense of using the mails in execution of a scheme to defraud. Appellants argue that this scheme was itself a conspiracy, and that, therefore, count 15, in effect, charges a conspiracy to conspire. There is no merit in this argument. Using the mails in execution of a scheme to defraud is an offense separate and distinct from that of conspiring so to use the mails. Chew v. United States (C.C.A.) 9 F.(2d) 348, 353; Morris v. United States (C.C.A.) 7 F.(2d) 785, 791; Ader v. United States (C.C.A.) 284 F. 13, 25; Preeman v. United States (C.C.A.) 244 F. 1, 19.

■ Appellants assign as error the action of the District Judge, the Honorable George Cosgrave, in proceeding with the trial of this case, notwithstanding an affidavis of bias and prejudice made and filed by appellant Siens, pursuant to section 21 of the Judicial Code, 28 U.S.C.A. § 25, which provides: "Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the

judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein. * * * Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists."

To satisfy the requirements of section 21, the facts stated in the affidavit "must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." Berger v. United States, 255 U.S. 22, 23, 41 S.Ct. 230, 233, 65 L.Ed. 481. The affidavit must "assert facts from which a sane and reasonable mind may fairly infer bias or prejudice." Keown v. Hughes (C.C.A.) 265 F. 572, 577. These facts "should be set out with at least that particularity one would expect to find in a bill of particulars filed by a pleader in an action at law to supplement and explain the general statements of a formal pleading." Morse v. Lewis (C.C.A.) 54 F.(2d) 1027, 1032.

The affidavit in this case states that the affiant believes that Judge Cosgrave has a personal bias and prejudice against the defendants and in favor of the government, by reason of which the defendants cannot have a fair and impartial trial before him. As reasons for this belief, the affidavit states that civil actions relating to some of the matters involved in this criminal case were brought against some of the defendants in the criminal case in the same court where the criminal case is pending; that in these civil cases there were allegations charging the defendants with having committed certain wrongful acts; and that the court in the civil cases made certain rulings adverse to the defendants, some of which rulings were made by Judge Cosgrave. These matters cannot be said to disclose personal bias or prejudice within the meaning of section 21 of the Judicial Code. Sacramento Suburban Fruit Lands Co. v. Tatham (C.C.A.) 40 F.(2d) 894. See, also, Berger v. United States, supra, 255 U.S. 22, page 31, 41 S.Ct. 230, 65 L.Ed. 481; Ex parte American Steel Barrel Co., 230 U.S. 35, 43, 33 S.Ct. 1007, 57 L.Ed. 1379.

The affidavit further states that counsel for the defendants requested Judge Cosgrave to postpone the trial of this case from May 16 to June 6, 1933, and that he declined to postpone it to June 6, but did postpone it to May 23, 1933. These rulings cannot be made the basis of a charge of personal bias or prejudice. Berger v. United States, supra; Ex parte American Steel Barrel Co., supra; Minnesota & Ontario Paper Co. v. Molyneaux (C.C.A.) 70 F.(2d) 545, 547; Craven v. United States (C.C.A.) 22 F.(2d) 605, 608. The affidavit sets out at length the colloquies which, on information and belief, are said to have occurred between court and counsel on the two occasions when this request was presented and considered. We find therein nothing from which a fair inference of bias or prejudice may be drawn.

The affidavit further states, on information and belief, that the Honorable William P. James, one of the judges of the District Court of the United States for the Southern District of California, has a personal bias and prejudice against the defendants, and that he has "communicated" his bias and prejudice to Judge Cosgrave. How this occurred, or what effect, if any, it had on Judge Cosgrave, is not stated. We cannot assume that it caused him to have a personal bias or prejudice against the defendants.

The affidavit further states, on information and belief, that certain persons, other than Judge Cosgrave, made certain statements which are set out in the affidavit, but it does not appear that any of these statements were made to any of the defendants in this case, or that they were made to Judge Cosgrave, or that he heard them or was influenced by them. Such statements, constituting mere gossip, afford no basis for a charge of bias or prejudice.

The affidavit further states that the affiant believes that Judge Cosgrave believes that some of the defendants have exercised or attempted to exercise political influence in an effort to have the indictment in this case dismissed; that the affiant believes that Judge Cosgrave has been informed that some of the defendants have used political intrigue to have the trial of the case postponed; and that affiant believes that Judge Cosgrave has received some information concerning the facts or purported facts of the case. The grounds or reasons for such beliefs, if any, are not stated. There is nothing to indicate that they are based on knowledge or information, or that they have any basis whatever. They are stated merely

as beliefs. Such a statement does not satisfy the requirements of section 21 of the Judicial Code.

The facts stated in the affidavit do not, in our opinion, support the charge of bias or prejudice. We hold, therefore, that, in disregarding the affidavit and proceeding with the trial, no error was committed.

 To prove the scheme and conspiracy alleged in the indictment and the acts done in furtherance thereof, the government offered in evidence certain books and records of Italo Petroleum Corporation of America, Brownmoor Oil Company, McKeon Drilling Company, Inc., Shingle, Brown & Co., and other corporations, all of which were objected to on the ground that no proper foundation had been laid for their introduction. The objections were overruled and the books and records were admitted in evidence. These rulings were excepted to and are assigned as error.

The general rule is that, before the books of a corporation can be received in evidence against a defendant other than the corporation itself, the entries therein must be shown to have been made by persons having knowledge of the facts, and must be corroborated by their testimony, if living and accessible, or by proof of their handwriting, if dead, insane, or beyond the reach of process. Chaffee v. United States, 18 Wall. 516, 541, 21 L.Ed. 908; Osborne v. United States (C.C.A.) 17 F.(2d) 246, 248.

The rule was not complied with in this case. It was not shown that the persons who made the entries here in question had any knowledge of the facts to which they related. Many of the entries were not proved or corroborated by the testimony of the persons who made them. No reason was shown for not calling these entrants as witnesses. Those who were called testified merely to the making of certain entries. They did not pretend to have any knowledge of the transactions referred to. The showing made was, under the general rule, clearly insufficient.

There is, however, an exception to the rule where the corporation whose books are offered in evidence is shown to have been dominated and controlled by the defendant against whom they are offered. Shreve v. United States (C.C.A.) 77 F.(2d) 2, 6; Osborne v. United States, supra; Cullen v. United States (C.C.A.) 2 F.(2d) 524, 525. The present case falls within this exception. The corporations whose books were introduced were shown to have been completely dominated and controlled by the defendants, some by one group of defendants, others by other defendants. The fact that all the books were not admissible against all the defendants was no ground for excluding them, though it was undoubtedly a good ground for requesting the court to limit the effect of the evidence. Mitchell v. United States (C.C.A.) 23 F.(2d) 260, 262; Silkworth v. United States (C.C.A.) 10 F.(2d) 711, 720. Appellants made such a request, and the court complied with it by instructing the jury as follows: "You are instructed that all of the evidence that has been received in this case is not applicable to all of the defendants. Only such evidence as tends directly to connect a particular defendant with the offense charged in the indictment can be considered by you in determining the guilt of that defendant. * * * With respect to the books of account and other records of the various corporations concerning which testimony has been admitted, you are instructed that the mere fact that a defendant is an officer, a director, or employee of such corporation does not make such books in anywise admissible as to him. Before any entry in such books can be considered by you in determining the guilt of any defendant it must first be proven to you beyond all reasonable doubt that such defendant made or caused to be made that particular entry, or that it was made with his knowledge and under his supervision. Unless you so find, no entry in the books of account can be considered by you in any manner as proving or tending to prove the guilt of any defendant."

This instruction might, and we think it should, have been more specific. That is to say, it should have indicated which books and records were to be considered as evidence against each defendant, but if appellants desired a more specific instruction, they should have requested it. Not having done so, they cannot now complain.

G. S. Goshorn, an accountant, called as a witness for the government, testified as follows: "I visited the office of the defendants Wilkes and Cavanaugh in San Francisco on September 21, 1931, and examined books and records of the partnership of the defendants Wilkes and Cavanaugh, which were given to me by Mrs. A.

B. Lyle at the direction of Mr. Wilkes. * * * I have examined the books and records in evidence and the books and records of Wilkes and Cavanaugh, partners, that I have just described, for the purpose of ascertaining the disposition of the 4,-500,000 shares of stock issued by the Italo Petroleum Corporation of America for the assets of the McKeon Drilling Company, Inc., and of ascertaining the amount of money and stock realized by the defendants from that 4,500,000 shares of stock. From the examination I have ascertained and have prepared a summary reflecting the disposition of the stock, based on the records and books in evidence and the books and records of Wilkes-Cavanaugh partnership, and also reflecting the money and stock realized by the defendants from the 4,500,000 shares of stock of the Italo Petroleum Corporation of America issued for the assets of the McKeon Drilling Company, Inc. These are the two summaries that I prepared in accordance with my testimony."

The two summaries referred to by the witness were then offered in evidence and were objected to by appellants as being hearsay and incompetent, being based on books and records not in evidence, and as calling for conclusions of the witness, and on the ground that no proper foundation had been laid for their introduction. The objections were overruled, and the summaries were admitted in evidence against all the defendants, without restriction or limitation. This ruling was excepted to and is assigned as error.

■ Summaries such as these are admissible, as against a particular defendant, when based on books and records which are properly in evidence against that defendant, or which have been produced in court, properly identified, and made available to him and his counsel. Shreve v. United States, supra; Foshay v. United States (C.C.A.) 68 F.(2d) 205, 215; Stephens v. United States (C.C.A.) 41 F.(2d) 440, 444; Arine v. United States (C.C.A.) 10 F.(2d) 778, 779; Cooper v. United States (C.C.A.) 9 F.(2d) 216, 222. Here, however, the summaries were based, in part, on books and records which were not in evidence at all and were not produced, identified, or made available to the defendants or their counsel.

■ They were, it is true, the books and records of defendants Wilkes and Cavanaugh, which the government could not have required them to produce, and the contents of which might, therefore, as. against Wilkes and Cavanaugh, have been proved by secondary evidence, as was done in Lisansky v. United States (C.C.A.) 31 F.(2d) 846, 850, 67 A.L.R. 67, Eddington v. United States (C.C.A.) 24 F.(2d) 50, 52, and Hanish v. United States (C.C.A.) 227 F. 584. That was not done or attempted in this case. The government did not offer copies of the missing books and records or otherwise attempt to prove their contents. It simply offered and was permitted to introduce and place before the jury, in documentary form, the conclusions of a government witness as to what these books and records showed. As to the defendants other than Wilkes and Cavanaugh, the summaries were clearly inadmissible. Greenbaum v. United States, 80 F.(2d) 113, decided by this court October 28, 1935.

■ As to Wilkes and Cavanaugh, they were inadmissible, because based, in part, on books and records which, though admitted in evidence against other defendants, were not admitted or admissible against Wilkes or Cavanaugh. Included in this category are the books and records of Brownmoor Oil Company and McKeon Drilling Company, Inc., for the introduction of which, as against Wilkes and Cavanaugh, no proper foundation was laid. The summaries do not indicate, nor does the evidence show, which books or records were the basis of any one of the numerous statements and conclusions therein contained. It would have been impossible, therefore, to limit the effect of this evidence by an instruction to the jury. No such limitation was, in fact, attempted.

Over appellants' objections, another summary, prepared by the same witness and purporting to show the disposition of 1,200,000 shares of stock of the Italo Petroleum Corporation of America said to have been issued as part payment for property acquired from Brownmoor Oil Company, was likewise admitted in evidence against all the defendants. It should have been excluded, for the reasons last stated. It was based on all the books and records in evidence. Each book or record was admissible against some defendant, but all the books and records were not admissible against all or any one of them. The summary, being based on all the books and records, was not admissible against any defendant.

A different situation would have been presented had it been shown that the books were kept and the book entries made in furtherance of a conspiracy to which all the defendants were parties. Silkworth v. United States, supra. There was no such showing in this case. The books were not offered or admitted as the acts or declarations of coconspirators. All the books were not, on that or any other ground, admissible against all the defendants. Since all the summaries were based on all the books, and since, as to each defendant, some of the books were inadmissible, it was error to admit any of the summaries against any of the defendants.

The three summaries thus erroneously admitted purport to show the distribution of 5,700,000 shares of stock said to have been issued in furtherance of the scheme and conspiracy alleged in the indictment, the number of shares received by each defendant and the amount of money realized therefrom, the purpose and effect being to establish each defendant's connection with and participation in the alleged scheme and conspiracy. The admission of the summaries was obviously prejudicial.

Judgment reversed.

### On Petition to Modify.

Mr. J. Charles Dennis, United States Attorney for the Western District of Washington, and Mr. Tom De Wolfe, a Special Assistant to the Attorney General of the United States, have, as friends of this court, petitioned us to modify the opinion filed herein on November 8, 1935, by "elaborating on and clarifying" that portion of the opinion which states: "The general rule is that, before the books of a corporation can be received in evidence against a defendant other than the corporation itself, the entries therein must be shown to have been made by persons having knowledge of the facts, and must be corroborated by their testimony, if living and accessible, or by proof of their handwriting, if dead, insane, or beyond the reach of process."

The suggested modification is unnecessary. That the general rule is as stated in the opinion cannot seriously be questioned. Chaffee v. United States, 18 Wall. 516, 541, 21 L.Ed. 908; Osborne v. United States (C.C.A. 9) 17 F.(2d) 246, 248. There are, of course, exceptions to the general rule. One such exception was recognized in Shreve v. United States (C.C.A. 9) 77 F.(2d) 2, 6, Osborne v. United States, supra, and Cullen v. United States (C.C.A. 9) 2 F.(2d) 524, 525, and was held applicable to this case. Other exceptions to the general rule were recognized in Lewis v. United States (C.C.A. 9) 38 F.(2d) 406, 413; United States v. Becker (C.C.A. 2) 62 F.(2d) 1007, 1010; United States v. Cotter (C.C.A. 2) 60 F.(2d) 689, 693; Cooper v. United States (C.C.A. 8) 9 F.(2d) 216, 222; Redmond v. United States (C.C.A. 1) 8 F.(2d) 24, 28; Billingsley v. United States (C.C.A. 6) 274 F. 86, 91; Parker v. United States (C.C.A. 2) 203 F. 950, 951; and Wilson v. United States (C.C.A. 2) 190 F. 427, 437. But the facts of this case, as disclosed by the record, do not bring it within any of these exceptions.

Petition denied.