UNITED STATES of America,
Plaintiff-Appellee,

v.

Lowell F. JOHNSON,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Joe S. AGERS, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

W. Shelley RICHEY,
Defendant-Appellant.

Nos. 78–1656, 78–1696 and 78–1718.

United States Court of Appeals,
Ninth Circuit.

April 4, 1979.

Rehearing Denied in Nos. 78–1696 and
78–1718 May 3, 1979.

James A. Shiner, Alex A. Gaynes, Gaynes, Lovell & Rockafellow, Ralph E. Seefeldt, Michael M. Neal, Sullivan & Seefeldt, Alex A. Gaynes (argued), William G. Walker (argued), Tucson, Ariz., for defendants-appellants.

Daniel G. Knauss, Asst. U. S. Atty., Tucson, Ariz., Joseph P. Covington, Atty., Dept. of Justice, Phoenix, Ariz., for plaintiff-appellee.

Before MERRILL and CHOY, Circuit Judges, and BONSAL *, District Judge.

CHOY, Circuit Judge:

Johnson, Agers, and Richey appeal from their convictions for mail fraud in violation of 18 U.S.C. § 1341. We reverse and remand.

I. *Statement of the Case*

On September 8, 1977, a federal grand jury indicted appellants Johnson, Agers, and Richey, and two others, for mail fraud.

---

* The Honorable Dudley B. Bonsal, Senior U.S. District Judge, for the Southern District of New York, sitting by designation.

Each appellant pleaded not guilty. At trial the Government sought to prove that the men had been involved in an elaborate land sale fraud involving Thunderbird Valley corporation, of which appellants were major stockholders, and other corporations controlled by one or more of the appellants. The Government maintained that Thunderbird Valley, through another corporation controlled by one of appellants, assigned spurious mortgages to third parties. It also used the same lots as security on two or more instruments without telling the creditors of other claims against the lots. At the same time, Thunderbird Valley itself paid assignees on some mortgages that were either spurious or upon which the mortgagor had defaulted, in order to encourage confidence in Thunderbird Valley operations. The Government also sought to show other similar fraudulent activities.

A jury found appellants guilty of all 24 counts of mail fraud charged. Each count represented a check mailed to an assignee of a spurious or defaulted mortgage. Each appellant was sentenced to four years in prison and fined $1000 on each count, with the prison sentences to run concurrently and the fines to be consecutive, thus totaling $24,000.

## II. *Foundation Requirements under Rule 1006*

### A. *Requirement of Admissibility*

■ In the court below appellants maintained that they were unaware of any improprieties. In particular, appellants contended that the 16 instances of double assignment revealed in the Government's case-in-chief were inadvertent. Mindful of this defense, the Assistant United States Attorney noted:

> The main thrust of the rebuttal is that these gentlemen indicate that there was perhaps a few inadvertent double assignments. We are also prepared to offer other testimony through Mr. Harbert that there were a great number of such double mortgages and assignments to the point where it was beyond inadvertence.

Later, the Government began to question Mr. Harbert, a postal inspector, about a summary he had made of records seized from the offices of the Thunderbird Valley corporation. This summary purported to establish that Mr. Harbert found 80 double assignments out of 260 files of transactions perused. When this questioning began, defense counsel [1] immediately objected:

> MR. GAYNES [Counsel for Richey]: Your Honor, I'm going to object to this witness testifying about a box of information he got without showing there was any kind of business records of this corporation.
>
> THE COURT: Yes, I think so.
>
> MR. COVINGTON [Assistant U.S. Attorney]: Your Honor, we've had this information available to the defense for some time.
>
> THE COURT: It don't make any difference. There has to be something in evidence from which the lawyers are in a position to cross examine the witness on.
>
> MR. COVINGTON: We're basing this on Rule 1,006 of the Federal Rules of Evidence on summary witnesses.
>
> THE COURT: But it does relate to matters that are not in evidence.
>
> MR. COVINGTON: I think that's the import of the Rule 1,006.
>
> THE COURT: Yes.

The Government then observed that it had sent defense counsel notice of its intent to use summaries. The court ascertained that counsel for each defendant had received that notice. Then the following colloquy took place:

> MR. GAYNES: . . . . My objection is based on the fact that the exhibits of what you're making summaries out of, you have to have some kind of foundation as to the trustworthiness of the documents, somehow, that they're business-related or business records and then you can make summaries of properly foundation—if you show a proper foundation as

---

1. Shortly before the objection at issue here, the trial judge stated: "I thought I said, but if I didn't, all objections by any one [defense] counsel inure to the benefit of all."

to business records. We don't know whether these business records—

THE COURT: You had an opportunity to look. That's the problem, though, and evidently you didn't. You didn't care to.

The district court erred in not requiring the proponent of the summary to establish a foundation. It was incorrect to suggest that the opponents had the burden of determining that a foundation was lacking.

The Government invoked Fed.R.Evid. 1006,[2] which provides:

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

We hold that under this Rule the proponent of the summary must establish that the underlying materials upon which the summary is based are admissible in evidence.

The purpose of Rule 1006 is to allow the use of summaries when the volume of documents being summarized is so large as to make their use impractical or impossible; summaries may also prove more meaningful to the judge and jury. *See* Note of Advisory Committee on Proposed Rules, *reprinted in* 28 U.S.C.A. Federal Rules of Evidence at 783; S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 694 (2d ed. 1977); 5 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 1006[02] (1975). Such a rationale imports that instead of using a summary, the proponent of the summary could introduce the underlying documents upon which the summary is based. *See United States v. Smyth*, 556 F.2d 1179, 1184 & n.11 (5th Cir.), *cert. denied*, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977).

Moreover, requiring the proponent to show the admissibility of the underlying materials is necessary to protect the integrity of the Federal Rules. In the instant case, the Government argued that notification of opposing counsel obviated the need to show that the underlying materials fell within an exception to the hearsay rule. We do not believe that Congress intended that counsel could abrogate other restrictions on admissibility—like the hearsay rule—by the use of summaries; we cannot read Rule 1006 as preempting the other Rules.

Finally, Congress placed Rule 1006 not in the Article of the Federal Rules dealing with exceptions to the hearsay rule, Article VIII, but rather in the Article dealing with "Contents of Writings, Recordings and Photographs," Article X. While the Government argues that this Article X Rule abrogates the hearsay limitations of Article VIII, the Article X provisions more properly deal with the "best evidence" problems arising from the use of materials other than originals. *See* Fed.R.Evid. 1002. And when Congress intended to provide an exception to the hearsay rule for materials which it also exempted from the best evidence rule in Article X, it did so by a provision in Article VIII. For example, Rule 1005 provides that public records may be proved with other than the original under some circumstances. Rules 803(8), (9), and (10), however, provide the hearsay exception for various types of public records. Similarly, Rule 1007 allows the use of secondary materials to prove the contents of testimony or a written admission of a party. But Rule 801(d)(2) provides that admissions are not subject to the hearsay rule. In claiming that Rule 1006 provides an exception from both the "best evidence" rule for summaries and the hearsay rule for the underlying materials, the Government (and the district court) misapprehended this congressional scheme.

---

**2.** Although the Government invoked Rule 1006, it did not introduce the summary into evidence. Rather it had Mr. Harbert testify about the summary. We discuss today whether the use of the summary violated the hearsay limitations of the Federal Rules of Evidence, the issue raised by appellants below. Because this case may be retried, we note that having a witness testify about the contents of a writing—*i. e.*, the summary—may also implicate the best evidence rule. *See* Fed.R.Evid. 1002.

Commentators and other courts have agreed that Rule 1006 requires that the proponent of a summary establish that the underlying documents are admissible in evidence. For example, Judge Weinstein and Professor Berger write:

> Before the chart, summary, or calculation may be admitted, it is necessary for the party offering the exhibit to lay a proper foundation for the admission of the original or duplicate materials on which the exhibit is based, or for the parties to stipulate to the admissibility of the materials. Charts, summaries, or calculations are inadmissible as evidence if, for any reason, the original or duplicate materials on which they are based are inadmissible.

Thus, if the original materials contain hearsay and fail to qualify as admissible evidence under one of the exceptions to the hearsay rule, the chart, summary, or calculation based on that material is inadmissible.

5 Weinstein on Evidence ¶ 1006[03], at 1006–5 to 1006–6 (footnotes omitted) [3]; see 2 Jones on Evidence § 7:30 (Gard rev. 1972); Federal Rules of Evidence Manual 196 (1978 Supp.).[4] Similarly both the Second Circuit and the Fifth Circuit have concluded that Rule 1006 requires that the proponent establish the admissibility of the underlying materials. See Smyth, 556 F.2d at 1184 & n. 11[5]; United States v. Conlin, 551 F.2d 534, 538 (2d Cir.), cert. denied, 434 U.S. 831,

**3.** The Government contends that the "foundation according to Wigmore seems to be . . . that the records come from the particular business and are available for inspection," citing 4 Wigmore on Evidence § 1230. Weinstein and Berger, however, more persuasively read Wigmore as supporting the rule they state in the first sentence we have quoted above.

In support of its reading of Wigmore, the Government refers to a decision cited by Wigmore, *State v. Olson*, 75 Utah 583, 287 P. 181 (1930), which the Government reads as not requiring demonstration that the underlying materials are admissible. The Government does not, however, discuss the Ninth Circuit decisions to which Wigmore refers. For example, Wigmore cites *Wilkes v. United States*, 80 F.2d 285, 291 (9th Cir. 1935). In that case this court held that the admission of a summary was reversible error when the underlying materials "were not admitted or admissible against" the defendants against whom they were introduced. *Id.* at 291. Significantly, Weinstein and Berger read *Wilkes* as supporting their second sentence we quoted above.

**4.** The commentators suggest that the relaxation of the hearsay rule as to expert testimony under Fed.R.Evid. 703 may also lessen the foundation requirement for a summary prepared and used by an expert under Rule 1006. Because in the instant case Mr. Harbert was not qualified as an expert, we need not address this question.

**5.** In *Gordon v. United States*, 438 F.2d 858, 876 (5th Cir.), cert. denied, 404 U.S. 828, 92 S.Ct. 139, 30 L.Ed.2d 56 (1971), decided prior to the effective date of the Federal Rules of Evidence, the Fifth Circuit wrote:

> When summaries are used, therefore, the court must ascertain with certainty that they are based upon and fairly represent competent evidence already before the jury.

*Id.* at 876. The court added:

> [T]he jury should be instructed that the summaries do not, of themselves, constitute evidence in the case but only purport to summarize the documented and detailed evidence already admitted . . . .

*Id.* at 877. In *EAC Credit Corp. v. King*, 507 F.2d 1232 (5th Cir. 1975), the Fifth Circuit approved the use of a summary when the underlying documents had originally been offered into evidence but had been withdrawn, citing proposed Rule 1006. The court did not explicitly state whether or not the underlying documents had to be admissible.

In *United States v. Smyth*, 556 F.2d 1179 (5th Cir.), cert. denied, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977), the Fifth Circuit wrote:

> The court could have excluded all of the underlying documents and received the summaries as evidence. The court chose, however, to admit these documents in evidence and to instruct the jury that the summaries were not evidence.

*Id.* at 1184. In a footnote the court added:

> Implicit in Rule 1006 is the notion that a trial judge may choose this alternative. In the circumstances of a given case the court may feel that the jury, or the court, . . . ought to consider the source documents in resolving a fact issue.

*Id.* at 1184 n. 11. Thus the Fifth Circuit disapproved the statements in *Gordon* that the underlying materials must be in evidence and that the summaries cannot themselves be evidence. At the same time, by indicating that the trial judge had discretion to choose between the summaries or the underlying documents, the Fifth Circuit implied that the underlying documents had to be admissible. We embrace the same rule today.

98 S.Ct. 114, 54 L.Ed.2d 91 (1977) [6]; *but cf. Case & Co. v. Board of Trade*, 523 F.2d 355, 361 (7th Cir. 1975) (*semble*) (in determining motion for summary judgment prior to effective date of Rule 1006, summary admissible when underlying documents made available to opposing party; court refers to Rule 1006).

We conclude that the proponent of a summary must demonstrate the admissibility of the underlying writings or records summarized, as a condition precedent to introduction of the summary into evidence under Rule 1006.[7]

### B. *Existence of Adequate Foundation*

The Government argues that even if the proponent of a summary must demonstrate that the underlying materials are admissible, such a requirement was met here; thus the district court's failure to articulate such a requirement was harmless error.

The Government argues first that "if the records viewed are identified as being in the general control of the defendant, the normal foundation for business records is not necessary." The Government appears to be arguing that such records would constitute admissions excluded from the hearsay rule by Fed.R.Evid. 801(d)(2).

Assuming *arguendo* that such records would constitute admissions, the testimony relied upon by the Government does not show that the records were "in the general control" of any of the appellants. At best that testimony established that the files of the 260 transactions had been taken from the offices of Thunderbird Valley and one witness referred to them as "corporate records." This testimony also does not demonstrate that the documents fell within the business record exception to the hearsay rule. *See* Fed.R.Evid. 803(6).[8]

### C. *Conclusion*

We conclude that the district court improperly allowed the Government to ask Mr. Harbert about the summary involving the 80 double assignments.[9] Having carefully reviewed the record as a whole, we cannot agree with the Government that the testimony about the summary was so unimportant as to make its improper admission a harmless error. *See* Fed.R.Crim.P. 52(a). Accordingly, appellants' convictions are

REVERSED and the cases REMANDED.[10]

**6.** The Second Circuit quoted the following language from the Fifth Circuit's *Gordon* decision, *see* note 6 *supra*:

[W]hen summaries are used . . . the court must ascertain with certainty that they are based upon and fairly represent competent evidence already before the jury.

551 F.2d at 538. The Second Circuit thus apparently requires that the underlying materials be both admissible and admitted. As discussed in note 6 *supra*, the Fifth Circuit no longer adheres to that portion of *Gordon* requiring that the underlying materials be in evidence. We agree with the Fifth Circuit and hold that the underlying materials must be *admissible*, but need not be *admitted*, in every case. As the Fifth Circuit noted, there may be times when the district court will, in its discretion, insist that the underlying materials rather than summaries be introduced. 556 F.2d at 1184; *see* note 6 *supra*. On other occasions, however, the district court may well within its discretion conclude that the formal step of introducing into evidence the underlying docu-

ments is not necessary to satisfy the foundation requirement. *See* note 6 *supra*. Additionally, we have difficulty reconciling an absolute requirement of admission with the last sentence of Rule 1006, providing that ordering the materials to be produced in the court at all is discretionary with the trial judge.

**7.** *See* note 5 *supra*.

**8.** The Government argues that Mr. Harbert's rebuttal testimony was relevant to refute appellants' claim that the double assignments were inadvertent. But relevancy is not the only limitation upon admissibility under the Federal Rules. In this case the Government improperly failed to overcome the obstacle imposed by the hearsay rule. *See* Fed.R.Evid. 402, 802.

**9.** *See* note 2 *supra*.

**10.** Accordingly, we do not consider appellants' other assignments of error.